UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
CASE NO. 22-11059


EMPIRE INDEMNITY INSURANCE COMPANY

*Defendant/Appellant*,

v.

POSITANO PLACE AT NAPLES I CONDOMINIUM ASSOCIATION, INC.,

*Plaintiff/Appellee.*

---

**BRIEF OF APPELLANT
EMPIRE INDEMNITY INSURANCE COMPANY**

---

On Appeal from the
United States District Court for the Middle District of Florida
No. 2:21-cv-00178-SPC-MRM

BUTLER WEIHMULLER KATZ
CRAIG LLP

J. PABLO CÁCERES, ESQ.
Florida Bar No.: 131229
pcaceres@butler.legal
CHRISTIAN LEE GONZÁLEZ-RIVERA, ESQ.
Florida Bar No.: 1020707
cgonzalez-rivera@butler.lega1
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900

*Counsel for Empire Indemnity Insurance Company*

Empire Indemnity Insurance Company v. Positano Place at Naples I Condo. Assn., Inc. Case No. 22-11059

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rules of Appellate Procedure 26.1 and 28(a)(1), and 11th Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Appellant, Empire Indemnity Insurance Company, files this Certificate of Interested Persons and Corporate Disclosure Statement.  The following is a full and complete list of all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal.

1.    Butler Weihmuller Katz Craig LLP – Counsel for Appellant

2.    J. Pablo Caceres – Appellate Counsel for Appellant

3.    Christian Lee González-Rivera – Appellate Counsel for Appellant

4.    Empire Indemnity Insurance Company – Appellant

5.    Positano Place at Naples I Condominium Association, Inc.–Appellee

6.    Pavese Law – Counsel for Appellee

7.    Justin B. Mazzara – Counsel for Appellee

8.    Boyle, Leonard & Anderson, P.A. – Counsel for Appellee

9.    Gregory L. Evans – Appellate Counsel for Appellee

10.    Mark Boyle, Sr. – Appellate Counsel for Appellee


/s/ *Christian Lee Gonzalez-Rivera*
CHRISTIAN L. GONZALEZ-RIVERA

Empire Indemnity Insurance Company v. Positano Place at Naples I Condo. Assn.,
Inc. Case No. 22-11059

## CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Circuit Rule 26.1-1, Appellant, Empire Indemnity Insurance Company, makes the following Corporate Disclosure:

Empire Indemnity Insurance Company is a wholly owned subsidiary of Empire Fire and Marine Insurance Company, an Illinois corporation. Empire Fire and Marine Insurance Company is a subsidiary of Zurich American Insurance Company, a New York corporation. Zurich American Insurance Company is a wholly owned subsidiary of Zurich Holding Company of America, Inc., a Delaware corporation. Zurich Holding Company of America, Inc. is wholly owned by Zurich Insurance Company Ltd., a Swiss corporation. Zurich Insurance Company Ltd. is directly owned by Zurich Insurance Group Ltd., a Swiss corporation. Zurich Insurance Group Ltd. is the only publicly traded parent company, with a listing on the Swiss stock exchange, and a further trading of American Depositary Receipts (Stock Ticker: ZURVY).

/s/ *Christian Lee Gonzalez-Rivera*
CHRISTIAN L. GONZALEZ-RIVERA

## STATEMENT REGARDING ORAL ARGUMENT

Because the issues are of first impression and their resolution impacts the enforcement of insurance appraisal provisions state and circuit-wide, Empire requests oral argument to assist the Court under Fed. R. App. P. 34(a)(1) and 11th Cir. R. 28-1(c).

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

CORPORATE DISCLOSURE STATEMENT ....................................................C-2

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CONTENTS .......................................................................... ii

TABLE OF CITATIONS ........................................................................ iv

STATEMENT OF SUBJECT-MATTER AND APPELLATE

JURISDICTION.............................................................................. xxiv

STATEMENT OF THE ISSUES...................................................................1

STATEMENT OF THE CASE...................................................................4

I.      Introduction....................................................................4

II.     Historical and Legal Background ...................................................5

        A.      Growth of Procedural Disarray in Compelling Appraisal ...................5

        B.      The Novel Process Defies Historical Practice ...................................10

III.    Factual and Procedural Background.............................................15

        A.      The Property and the Policy .................................................15

        B.      Empire Investigates and Adjusts the Claim ........................................16

        C.      Positano Sues Empire.........................................................18

STATEMENT OF THE STANDARD AND SCOPE OF REVIEW ......................20

SUMMARY OF THE ARGUMENT ....................................................22

ARGUMENT ..................................................................................24

I.    Compelling Appraisal without a Showing of Specific Performance

      was Procedurally Improper..............................................................24

      A.    Compelling Appraisal Constitutes Specific Performance..................24

      B.    Positano Failed to Plead and Show Entitlement to Specific

            Performance...........................................................................34

II.   Compelling Appraisal Absent Summary Judgment that Empire

      Breached the Provision Constituted a Grant of Unpled Relief

      Redressing an Un-adjudicated Wrong..............................................38

III.  The District Court Erroneously Compelled Appraisal of Buildings for

      Which Coverage Was Denied..........................................................41

IV.   The District Court Refused Imparting Guidelines for Appraisal Based

      on the Erroneous Legal Conclusion that It Lacked Such Discretion ...........45

      A.    The District Court Failed to Review the Issue De Novo ...................45

      B.    The District Court Improperly Refused to Impart Appraisal

            Guidelines............................................................................46

CONCLUSION.............................................................................54

CERTIFICATE OF COMPLIANCE.................................................55

CERTIFICATE OF SERVICE .........................................................56

# TABLE OF CITATIONS

**Cases**

*Alabama v. U.S. Army Corps of Engineers,*

424 F.3d 1117 (11th Cir. 2005) .................................................................46

*Allegro at Boynton Beach, L.L.C. v. Pearson,*

287 So. 3d 592 (Fla. 4th DCA 2019).........................................................39

*Allen v. Amica Mutual Ins. Co.,*

No. 1:12-cv-49, 2013 WL 11927705 (N.D. Ga. Feb. 28, 2013) ...................53

*Allen v. USAA Cas. Ins. Co.,*

790 F.3d 1274 (11th Cir. 2015) .................................................................51

*Allstate Insurance Company v. Suarez,*

833 So. 2d 762 (Fla. 2002) ................................................................ passim

*Am. Storage Centers v. Safeco Ins. Co. of Am.,*

651 F.Supp.2d 718 (N.D. Ohio 2009) .......................................................48

*American Capital Assurance Corp. v. Leeward Bay at Tarpon Bay Condo.*

*Ass'n, Inc.,*

306 So. 3d 1238 (Fla. 2d DCA 2020).........................................................31

*Anderson v. Auto-Owners Ins. Co.,*

172 F.3d 767 (11th Cir. 1999) ..................................................................32

*Ashcroft v. Iqbal,*

556 U.S. 662 (2009).....................................................................................34

*Auto-Owners Ins. Co. v. Anderson*,

    756 So. 2d 29 (Fla. 2000) ............................................................................32

*Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*,

    129 F.Supp.3d 1150 (D. Colo. 2015) ............................................... 48, 49, 52

*Baldwin Realty Group Inc. v. Scottsdale Ins. Co.*,

    No. 6:18-cv-785-Or1-41DCI, 2018 WL 5221228 (M.D. Fla. Oct. 22,

    2018) ................................................................................................................45

*Battles, Inc. v. Nationwide General Ins. Co.*,

    No. 3:19-cv-13-DML-DCP, 2020 WL 6365513 (E.D. Tenn. March

    10, 2020) ............................................................................................... passim

*Bettor v. Esurance Property and Casualty Ins. Co.*,

    No.: 18-61860-CIV-MORENO, 2019 WL 3408900 (S.D. Fla. June

    17, 2019) ..........................................................................................................45

*Biscayne Cove Condo. Ass'n, Inc. v. QBE Ins. Corp.*,

    2013 WL 2646828 (S.D. Fla. June 12, 2013)...........................................8, 25

*Blue-Grace Logistics LLC v. Fahey*,

    340 F.R.D. 460 (M.D. Fla. 2022) ..................................................................37

Bonafonte v. Lexington Ins. Co.,

    No. 08-cv-21062-CIV, 2008 WL 2705437 (S.D. Fla. July 9, 2008)............51

*Buckley Towers Condo., Inc. v. QBE Ins. Corp.*,

    395 Fed. App'x 659 (11th Cir. 2010) ...................................................... 35, 52

*Burchell v. Marsh*,

    58 U.S. 344 (1854) ......................................................................................... 48

*Burgess v. Miller*,

    492 F.Supp. 1284 (N.D. Fla. 1980) .............................................................. 47

*Calzadilla v. Scottsdale Ins. Co.*,

    No. 18-25424, 2019 WL 2245518 (S.D. Fla. April 10, 2019) ..................... 45

*Castigliano v. O'Connor*,

    911 So. 2d 145 (Fla. 3d DCA 2005) ....................................................... 34, 37

*Castillo at Tiburon Condominium Ass'n, Inc. v. Empire Indemnity Ins. Co.*,

    No. 2:20-cv-468,, 2021 WL 4438370 (M.D. Fla. Sept. 28, 2021) ............... 45

*Cedant Corp. v. Forbes*,

    70 F.Supp.2d 339 (S.D.N.Y. 1999) ............................................................. 11

*Chambers v. Nasco, Inc.*,

    501 U.S. 32 (1991) ......................................................................................... 47

CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.,

    110 F.Supp.2d 259 (D. Del. 2000) ............................................................... 48

*Citizens Prop. Ins. Corp. v. Cuban-Hebrew Congregation of Miami, Inc.*,

    5 So. 3d 709 (Fla. 3d DCA 2009) ...................................................... 14, 31, 32

*Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc.*,

    117 So. 3d 1226 (Fla. 3d DCA 2013)........................................ 31, 32, 33, 41

*City of Omaha v. Omaha Water Co.*,

    218 U.S. 180 (1910).....................................................................30

*Collins v. Collins*,

    53 Eng. Rep. 916 (1858) (same)...................................................30

*Columbia Cas. Co. v. Southern Flapjacks, Inc.*,

    868 F.2d 1217 (11th Cir. 1989) ...................................................30

*Compare Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:20-cv-00136, 2020 WL 5973177 (M.D. Fla. Sept. 2, 2020)................9

*Coral Reef Metro, LLC v. Scottsdale Ins. Co.,*

    2019 WL 700114 (M.D. Fla. Feb. 20, 2019).................................................45

*Coral Reef Metro, LLC v. Scottsdale Ins. Co.*,

    No. 2:18-cv-460, 2019 WL 721286 (M.D. Fla. Jan. 30, 2019)....................50

*Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:20-cv-00136, 2021 WL 2003007 (M.D. Fla. May 19, 2021).. 9, 25, 28, 40

*Cresthaven-Ashley Master Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 19-80959-civ, 2022 WL 873998 (S.D. Fla. Mar. 24, 2022)...................52

*Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:20-cv-136, 2022 WL 780950 (M.D. Fla. Mar. 15, 2022) .................40

*Cypress Chase Condo. Ass'n A v. QBE Ins. Corp.*,

    No. 10-61987, 2013 WL 1191413 (S.D. Fla. Mar. 22, 2013)......................39

*Diamond Lake Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:19-cv-547, 2021 WL 6118076 (M.D. Fla. Dec. 27, 2021).................52

*Evanston Ins. Co. v. Cogswell Properties, LLC*,

    683 F.3d 684 (6th Cir. 2012) .........................................................................13

*Executive Plaza, LLC v. Peerless Ins. Co.*,

    No. 09-1976, 2010 WL 11632677 (E.D. N.Y. Feb. 8, 2010).......................52

*Ferrero v. Assoc. Materials Inc.*,

    923 F.2d 1441 (11th Cir. 1991) ............................................................. 10, 26

*Fireman's Fund Ins. Co. v. Steele Street Limited II*,

    2022 WL 39392 (10th Cir. Jan. 5, 2022)............................................... 20, 27

*Fla. Gaming Corp. v. Affiliated FM Ins. Co.*,

    2008 WL 11407210 (S.D. Fla. Apr. 21, 2008).........................................9, 32

*Fla. Ins. Guaranty Ass'n v. Olympus Ass'n*,

    34 So.3d 791 (Fla. 4th DCA 2010)................................................................31

*Florida Ins. Guar. Ass'n v. B.T. of Sunrise Condo. Ass'n, Inc.*,

    46 So. 3d 1039 (Fla. 4th DCA 2010)............................................................41

*Ford v. American Security Ins. Co.*,

    No. 1:19-cv-20223-JLK, 2019 WL 6609239 (S.D. Fla. Dec. 5, 2019).........53

*Fouladi v. Geovera Specialty Ins. Co.*,

    No. 6:18-cv-326-Orl-40KRS, 2018 WL 3761039 (M.D. Fla. April 30,

    2018) ...........................................................................................................32

*Gauche v. London & L. Ins. Co.*,

    10 F. 347 (E.D. La. 1881).............................................................................11

*Georgia Advocacy Office v. Jackson*,

    4 F.4th 1200 (11th Cir. 2021) ................................................................ 37, 46

*Gray Ins. Co. v. Fla. Paving & Trucking, Inc.*,

    2014 WL 12776172 (S.D. Fla. Feb. 10, 2014)............................................38

*Great Lakes Ins. SE v. Concourse Plaza, A Condo. Ass'n, Inc.*,

    No. 21-cv-21873, 2022 WL 1681883 (S.D. Fla. May 26, 2022) .................39

*Grove Towers Condo. Ass'n, Inc. v. Lexington Ins. Co.*,

    No. 19-24199-Civ-Cooke/Goodman, 2020 WL 4561599 (S.D. Fla.

    June 9, 2020).................................................................................................32

*Hale v. Johnson*,

    845 F.3d 224 (6th Cir. 2016) .......................................................................29

*Hanover Fire Ins. Co. v. Lewis*,

    28 Fla. 209 (Fla. 1891) ......................................................................... 11, 48

*Happy Hank Auction Co. v. American Eagle Fire Ins. Co.*,

    1 N.Y.2d 534 (N.Y. 1956) ..............................................................12

*Hardware Dealers' Mut. Fire Ins. Co. of Wis. v. Glidden Co.*,

    284 U.S. 151 (1931)......................................................................47

*Harris v. Equifax Information Services, LLC*,

    No. 8:20-cv-1770, 2020 WL 6545977 (M.D. Fla. Nov. 6, 2020) ................50

*Hayes v. Allstate Ins. Co.*,

    722 F.2d 1332 (7th Cir. 1983) ........................................... 20, 26, 27

*Hepburn et al. v. Auld. et al.*,

    5 Cranch 262 (1809) ........................................................ 10, 35

*Holmes v. Richet*,

    56 Cal. 307, 313 (Cal. 1880) .........................................................11

*Hozlock v. Donegal Companies/Donegal Mut. Ins. Co.*,

    745 A.2d 1261 (Pa. Super. Ct. 2000) ............................................48

*Indian Harbor Insurance Company v. International Studio Apartments, Inc.*,

    No. 09-60671-CIV-ALTONAGA/Brown, 2009 WL 10668754 (S.D.

    Fla. Sept. 22, 2009)................................................................ 39, 40

*Intervest Constr. Of Jax, Inc. v. Gen. Fid. Ins. Co.*,

    133 So. 3d 494 (Fla. 2014) ..........................................................50

*Itasca Paper Co. v. Niagara Fire Ins. Co.*,

    220 N.W. 425 (Minn. 1928) ...........................................................48

*J.P.F.D. Investment Corporation v. United Specialty Ins. Co.*,

    769 Fed. App'x 698 (11th Cir. 2019) ........................................ 20, 30, 33, 45

*J.W. Mariner Corp. v. Zurich American Ins. Co.*,

    No. 5:20-cv-143, 2021 WL 4958099 (N.D. Fla. July 7, 2021) ....................39

*Jacobs v. Nationwide Mut. Fire Ins. Co.*,

    236 F.3d 1282 (11th Cir. 2001) ............................................................ 20, 38

*Jin Zhi Star Lt. LLC v. American Zurich Ins. Co.*,

    No. 08-61101-Civ-Moreno/Torres, 2011 WL 13110260 (S.D. Fla.

    June 16, 2011)...............................................................................32

*JM Walker LLC v. Acadia Ins. Co.*,

    356 Fed. App'x 744 (5th Cir. 2009) ............................................................21

*Johnson v. Nationwide Mut. Ins. Co.*,

    828 So. 2d 1021 (Fla. 2002) ............................................................ 7, 8, 42

*Jossfolk v. United Property & Cas. Ins. Co.*,

    110 So. 3d 110 (Fla. 4th DCA 2013).............................................................52

*Kendall Lakes Townhomes Developers, Inc. v. Agricultural Excess &*

    *Surplus Lines Insurance Co.*,

    916 So. 2d 12 (Fla. 3d DCA 2005).............................................................43

*La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*,

    733 F.Supp.2d 1332 (S.D. Fla. 2010)..................................................... 25, 36

*Liberty American Ins. Co. v. Kennedy*,

    890 So. 2d 539 (Fla. 2d DCA 2005).............................................. 9, 31, 32, 33

*Macom Technology Solutions Holdings, Inc. v. Ifineon Technologies AG*,

    881 F.3d 1323 (Fed. Cir. 2018) ....................................................................38

*Mapleton Processing, Inc. v. Society Ins. Co.*,

    No. C12-4083-LTS, 2013 WL 3467190 (N.D. Iowa July 10, 2013) .... passim

*Marbella at Spanish Wells 1 Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:21-cv-641, 2022 WL 1302328, (M.D. Fla. May 2, 2022)....................8

*MaxLite, Inc. v. ATG Electronics, Inc.*,

    No. 15-1116, 2019 WL 3283077 (D. N.J. July 22, 2019)............................37

*McCoy v. American Family Mut. Ins. Co.*,

    189 F.Supp.3d 896 (D. Minn. 2016) ..................................................... 25, 39

*McMahan v. Toto*,

    311 F.3d 1077 (11th Cir. 2002) ............................................................. 30, 32

*Merrick Preserve Condo. Ass'n, Inc. v. Cypress Prop. & Cas. Ins. Co.*,

    315 So. 3d 45 (Fla. 4th DCA 2021)..............................................................42

*Metal Products Co., LLC v. Ohio Security Ins. Co.*,

    No. 21-11612, 2022 WL 104618 (11t Cir. Jan. 11, 2022) ...........................52

*Metropolitan Casualty Ins. Co. v. SFR Services L.L.C.,*

    2020 WL 4207375 (M.D. Fla. July 22, 2020) ................................................45

*Michelle Condominium, Inc. v. Certain Underwriters at Lloyd's, London,*

    2021 WL 4244899 (S.D. Fla. Sept. 17, 2021) ..............................................45

*Milligan v. CCC Information Services, Inc.,*

    920 F.3d 146 (2d Cir. 2019) ........................................................................20

*New Amsterdam Cas. Co. v. J.H. Blackshear, Inc.,*

    156 So. 695 (Fla. 1934) ...............................................................................52

*Nygaard v. Property Damage Appraisers, Inc.,*

    779 Fed. App'x 474 (9th Cir. 2019) ............................................................20

*Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.,*

    443 P.3d 47 (Col. 2019) ...............................................................................48

*Palmer v. Fidelity Nat'l Prop. & Cas. Ins. Co.,*

    No. 13-80741, 2014 WL 12461372 (S.D. Fla. Nov. 7, 2014) ..................9, 39

*Parents Involved in Community Schools v. Seattle School Dist. No. 1,*

    551 U.S. 701 (2007) .....................................................................................29

*Parkway Baptist Church, Inc. v. Guideone Elite Ins. Co.,*

    No. 10-23965, 2011 WL 13099891 (S.D. Fla. Sept. 11, 2011) ...................25

*Parkway Baptist Church, Inc. v. Guideone Elite Ins. Co.,*

    No. 10-23965-CIV, 2011 WL 13099891 (S.D. Fla. Sept. 21, 2011) ...........36

*Penn Central Corp. v. Consolidated Rail Corp.*,

    56 N.Y.2d 120 (N.Y. Ct. App. 1982) ............................................................12

*People's Trust Ins. Co. v. Fernandez*,

    317 So. 3d 207 (Fla. 3d DCA 2021)...............................................................24

*People's Trust Ins. Co. v. Nowroozpour*,

    277 So. 3d 135 (Fla. 4th DCA 2019)................................................. 14, 24, 29

*People's Trust Ins. Co. v. Slavin*,

    No. 4D21-3025, 2022 WL 1021043 (Fla. 4th DCA April 6, 2022)..............39

*People's Trust Ins. Co. v. Tracey*,

    251 So. 3d 931 (Fla. 4th DCA 2018)..............................................................43

*People's Trust Ins. Co. v. Vidal*,

    305 So. 3d 710 (Fla. 3d DCA 2020)...............................................................24

*Pernas v. Scottsdale Ins. Co.*,

    No. 1:15-cv-21506, 2016 WL 471949 (S.D. Fla. Feb. 8, 2016)  39, 41, 42, 43

Petrello v. White,

    533 F.3d 110 (2d Cir. 2008) ..........................................................................27

*Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    2022 WL 1085541 (M.D. Fla. Jan. 26, 2022) ...........................................8, 40

*Providence Washington Ins. Co. v. Gulinson*,

    215 P. 154 (Col. 1923)...................................................................................47

*Red Cross Line v. Atlantic Fruit Co.*,

    264 U.S. 109 (1924)......................................................................10

*Residences at European Village Condo. Ass'n, Inc. v. Rockhill Ins. Co.*,

    No. 3:19-cv-1490, 2020 WL 5948314 (M.D. Fla. July 17, 2020) ...............25

*Rodriguez v. Powell,*

    853 Fed.App'x 613 (11th Cir. 2021) ............................................................21

*Rogers v. State Farm Fire & Cas. Co.*,

    984 So. 2d 382 (Ala. 2007)...........................................................................7

*Ruckdeschel v. People's Trust Ins. Co.*,

    327 So. 3d 311 (Fla. 4th DCA 2021)............................................................24

*Saba v. Homeland Ins. Co. of America*, 159 Ohio St. 237, 248-249 (Ohio

    1953) ............................................................................................. 11, 35

*Safepoint Ins. Co. v. Hallet*,

    No. 5D20-206, 2021 WL 2599656 (Fla. 5th DCA, June 25, 2021).............31

Salt Lake Tribune Publ'g Co., LLC v. Management Planning, Inc.,

    390 F.3d 684 (10th Cir. 2004) ......................................................................13

*Saltponds Condo. Ass'n, Inc. v. Rockhill Ins. Co.*,

    No. 20-CV-10063-JEM, 2020 WL 6875747 (S.D. Fla. Oct. 26, 2020)........25

*Sands on the Ocean Condo. Ass'n, Inc. v. QBE Ins. Corp.*,

    No. 05-14362-Civ, 2009 WL 790120 (S.D. Fla. Mar. 24, 2009).................32

*Sardinas v. Miami Veterinary Specialists, P.A.*,

No. 1:20-cv-22987, 2020 WL 7241364 (S.D. Fla. Dec. 8, 2020)................36

*Sauer v. Xerox Corp.*,

17 F.Supp.2d 193 (W.D. N.Y. 1988).............................................................26

*SB Holdings I, LLC v. Indian Harbor Ins. Co*.,

No. 6:19-cv-668-Or1-40DCI, 2020 WL 1674326 (M.D. Fla. Jan. 9,

2020) ............................................................................................................45

*Smith v. Organization of Foster Families for Equality and Reform*,

431 U.S. 816 (1977).....................................................................................47

*Sos v. State Farm Mutual Auto. Ins. Co.*,

396 F.Supp.3d 1074 (M.D. Fla. 2019) ........................................................51

*St. Panteleimon Russian Orthodox Church v. Church Mut. Ins. Co.*,

No. 13-1977, 2013 WL 6190400 (D. Minn. 2016) ............................... 25, 40

*St. Paul Fire & Marine Ins. Co. v. Walsenburg land & Development Co.*,

278 P. 602 (Col. 1929)..................................................................................48

*State Farm Fire & Cas. Co. v. Harper*,

No. 3:20-cv-00856, 2022 WL 989088 (M.D. Tenn. Mar. 31, 2022) ...........46

*State Farm Fla. Ins. Co. v. Gonzalez*,

76 So. 3d 34 (Fla. 3d DCA 2011)................................................................31

*Stillman v. Travelers Ins. Co.*,

88 F.3d 911 (11th Cir. 1996) ...........................................................39

*Sun Ins. Office, Ltd. v. Clay*,

133 So. 2d 735 (Fla. 1961) ...........................................................33

*Supreme Fuels Trading FZE v. Sargeant*,

689 F.3d 1244 (11th Cir. 2012) ....................................................27

Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.,

981 F.Supp. 581 (N.D. Iowa 1997) ...............................................49

*Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*,

250 F. Supp. 2d 1357 (M.D. Fla. 2003) ............................. 9, 30, 31

*Tipton v. Woodbury*,

616 F.2d 170 (5th Cir. 1980) ................................................. 37, 38

*Todd v. Hyzer*,

18 So. 888 (Fla. 1944) ...................................................................25

Trinidad v. Fla. Peninsula Ins. Co.,

121 So. 3d 433 (Fla. 2013) ...........................................................51

*Tscheider v. Biddle*,

24 F. Cas. 253 (E.D. Miss. 1877) ..................................................11

*Twelfth Ave. Investments, Inc. v. Smith*,

979 So. 2d 1216 (Fla. 4th DCA 2008).............................................24

*Underwriters at Lloyd's, London v. Sorgenfrei*,

278 So. 3d 930 (Fla. 5th DCA 2019)............................................................43

United States v. Carrigan,

804 F.2d 599 (10th Cir. 1986) .....................................................................48

*Vallina v. Mansiana Ocean Residences, LLC*,

2010 WL 11553422 (S.D. Fla. Oct. 12, 2010) .............................................36

*Vasquez v. Citizens Property Ins. Corp.,*

304 So. 3d 1280 (Fla. 3d DCA 2020)..........................................................51

*Villareal v. Owners Ins. Co.*,

No. 16-cv-01862, 2016 WL 9735733 (D. Col. Dec. 1, 2016).......................48

*Vista Pointe Townhome Ass'n Inc. v. Auto-Owners Ins. Co.*,

2018 WL 1773407 (D. Colo. April 13, 2018) ...................................... passim

*Walnut Creek Townhome Ass'n v. Depositors Ins. Co.*,

906 N.W.2d 205 (Iowa Ct. App. July 19, 2017) ............................................7

*Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.*,

No. 2:19-cv-81, 2019 WL 3852731 (M.D. Fla. Aug. 16, 2019)........ 9, 40, 50

*Westar Energy, Inc. v. Lake*,

552 F.3d 1215 (10th Cir. 2009) ...................................................................26

*Western Surety Co. v. PASI of LA, Inc.*,

334 F.Supp.3d 764 (M.D. La. Sept. 25, 2018) ....................................... 10, 26

*Williams v. Citizen Prop. Ins. Co.*,

    285 So. 3d 334 (Fla. 4th DCA 2019)............................................................31

*Wingerter v. Chester Quarry Co.*,

    185 F.3d 657 (7th Cir. 1998) ........................................................................20

*Woodward v. Liberty Mut. Ins. Co.*,

    No. 3:09-cv-0228, 2010 WL 1186323 (N.D. Tex. Mar. 26, 2010)...............25

**Rules**

28 U.S.C. §636(b)(1)(B) ...............................................................................45

Fed. R. Civ. P. 56 ...........................................................................................4

Fed. R. Civ. P. 56(a)......................................................................................41

Fed. R. Civ. P. 65 ................................................................................. passim

Fed. R. Civ. P. 72(b)(3)..................................................................................20

**Codes**

28 U.S.C. §1292(a)(1)..................................................................................1, 27

28 U.S.C. §636(b)(1)(B) ...............................................................................20

**Other Authorities**

112 A.L.R. § 9 (1938) ....................................................................................12

15 Couch on Insurance §209:10 (2021)..........................................................13

44 A.L.R.2d 850 §1 (1955).............................................................................11

5 Bus. & Com. Litig. Fed. Cts. § 49:79 (4th ed.2020)...................................37

5 POMEROY, EQUITY JURISPRUDENCE (4th ed. 1919)................................................35

Alfred Hayes, *Specific Performance of Contracts for Arbitration or*

*Valuation*,

1 CORNELL L. REV. 225, 225 (1916)...........................................................12

Amy M. Coughenourd, *Appraisal and the Property Insurance Appraisal*

*Clause—A Critical Analysis: Guidance and Recommendations for*

*Arizona*, 41 ARIZ. ST. L.J. 403, 413 (2009).......................................13

Amy O'Connor, *NAIC Data: Florida Property Lawsuits Total 76% of*

*Insurer Litigation in U.S.*, INSURANCE JOURNAL (April 14, 2021)................6

Amy Schmitz, *Ending A Mud Bowl: Defining Arbitration's Finality Through*

*Functional Analysis*, 37 GA. L. REV. 123, 169 (2002) ..................................26

Amy Schmitz, *Refreshing Contractual Analysis of ADR Agreements by*

*Curing Bipolar Avoidance of Modern Common Law*, 9 HARV. NEGOT.

L. REV. 1, 2, 4 n.22 (2004) .................................................... 36, 46

BAXTER DUNAWAY, 4 LAW OF DISTRESSED REAL ESTATE §44A:17 (2022

update) .......................................................................6

Charles Edwards, *An Appraisal of the Appraisal Remedy in Property*

*Insurance*, 136 THE NAT'L REV. (Vol. XII) (May, 11, 2022).........................6

David Frisch, *Commercial Common Law, the United Nations Convention on the International Sale of Goods, and the Inertia of Habit*, 74 TLN. L. Rev. 495, 541 (1999) ....................................................................14

Ed Leefeldt, *Why Is Homeowners Insurance In Florida Such a Disaster?*, FORBES (Mar. 26, 2021)....................................................................6

Evan Stephenson & Kayla Scroggins-Uptigrove, *"Just Win, Baby": The Tenth Circuit Rejects the "Anything Goes" Tactics of the Hail-Litigation Gold Rush,* 96 DENVER L. REV. 267, 267, 276 (2019) ..................6

Gary Williams, *Winning the Property Insurance Appraisal*, 45-OCT JTLATRIAL 22, 26 (2009) ...........................................................10

GREGORY DELL ET AL., FLORIDA INSURANCE LAW & PRACTICE §14:8 (2021-2022 ed.) ............................................................................9

Hayes, *Specific Performance of Contracts for Arbitration or Valuation* 1 CORN. L. QUART. 225 (1916).........................................................35

Jason Kirwan, *Appraising A Presumption: A Modern Look at the Doctrine of Specific Performance In Real Estate Contracts*, 47 WM. & MARY L. REV. 697, 701 (2005)....................................................................14

Johnny Parker, *Understanding the Insurance Policy Appraisal Clause: A Four-Step Program*, 37 U. TOL. L. REV. 931, 931 (2006) ...........................6

JONATHAN WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL 344-345,

    349 (3d ed., 2015)................................................................ passim

Law & Starinovich, *What Is It Worth? A Critical Analysis of Insurance*

    *Appraisal,*.................................................................................26

Mark Ticer, *A Primer on Appraisal in Texas: One of the Most Frequently*

    *Abused and Misused Provisions in an Insurance Policy*, 5 J. TEX. INS.

    L. 41, 42 (2004) ..............................................................6

MICHAEL BOYER & BARRY ZALMA, PROPERTY INVESTIGATION CHECKLISTS:

    UNCOVERING INSURANCE FRAUD §1:42 (13th ed., 2021 update).....................6

Richard Coulson, *Is Contractual Arbitration an Unconstitutional Waiver of*

    *the Right to Trial by Jury in Oklahoma?*, 16 OKLA. CITY U. L. REV. 1,

    11 (1991)......................................................................12

Samuel Bray, *The System of Equitable Remedies*, 63 UCLA L. REV. 530,

    557 (2016).....................................................................37

*Specific Enforcement of Arbitration Contracts*, U. PENN. L. REV. 160, 161,

    176 (1934).....................................................................12

*Specific Performance of Contracts Containing A Provision to Arbitrate*, 31

    Y.L.J. 670, 670-671 (1922) ..........................................35

Stephen N. Subrin, *How Equity Conquered Common Law: The Federal Rules of Civil Procedure in Historical Perspective*, 135 U. PENN. L. R. 909, 920 (1987)...............................................................................26

Timothy Gray et al., *Benefits, Pitfalls, and Trends in Property Appraisal*, 44-SPG BRIEF 20, 21 (2015).......................................................6, 7

Timothy P. Law & Jillian L. Starnovicha, *What Is It Worth? A Critical Analysis of Insurance Appraisal*, 13 CONN. INS. L.J. 291, 298 (2006-2007) ..............................................................................13

Wesley A. Sturges & William W. Sturges, *Appraisals of Loss and Damage Under Insurance Policies*, 13 U. MIAMI L. REV. 1, 2 (1958)........... 12, 36, 46

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

The District Court has original jurisdiction under 28 U.S.C. §1332(a)(1) and this Court has appellate jurisdiction under §1292(a)(1). The order appealed constituted injunctive relief, since it compelled Empire's specific performance of the insurance policy's appraisal provision.

## STATEMENT OF THE ISSUES

All issues involve purely legal questions seeking this Court's first impression. Several have state and circuit-wide impact.

First, Empire appealed from interlocutory orders compelling appraisal under 28 U.S.C. §1292(a)(1). The specific performance of a contract is an interlocutory remedy contemplated by Section 1292(a)(1), if the order's *form* or *substance* comes within the scope of Fed. R. Civ. P. 65. Despite affording injunctive relief in compelling appraisal, the lower court refused to acknowledge doing as much. **Is the form or substance of the order injunctive and, thus, appealable under Section 1292(a)(1)?**[1]

Second, the district court improperly compelled appraisal outside the parameters of specific performance. Florida law regards compelling appraisal a substantive right to specific performance. Federal courts exercise equitable powers in affording such relief through Rule 65. Below, the court failed to do this, compelling appraisal as something *other than* specific performance instead, without the requisite pleading or proof. Alternatively, the court reasoned that Positano would have sufficiently met either burden. **May a federal district court compel an insurance appraisal outside its equity jurisdiction under Rule 65?**

---

[1] Empire rests on its jurisdictional brief in answering "yes" to this question.

1

**Alternatively, did Positano sufficiently plead and show entitlement to specific performance?**

Third, the district court incorrectly compelled appraisal without adjudicating Empire's alleged breach of the provision through summary judgment. Specific performance of a contract is a remedy presupposing the existence and adjudication of a breach. Here, the lower court refused to require a summary judgment. **May a federal district court compel appraisal without adjudicating the breach of the provision through summary judgment?**

Fourth, the district court erroneously compelled appraisal of all buildings, even those that Empire wholly denied coverage for. The Policy separately insures each building Positano comprises. Under Florida law, Empire may only be compelled to appraise buildings it did not wholly deny coverage for. Empire denied coverage for two buildings. Nevertheless, the court compelled appraisal of all buildings alike. **May a federal district court compel appraisal of all buildings, where the insurer accepts coverage for only some of them?**

Lastly, the district court wrongly refused to consider providing any reasonable guidelines requested by Empire for safeguarding minimal due process at appraisal. Judicial enforcement of appraisal constitutes injunctive relief. The same requires tailoring under Rule 65 and the lower court's inherent powers. Moreover, judicial action must safeguard the parties' due process. Except for itemization of the award,

2

the court below refused to consider any other appraisal instructions, disclaiming any power to prescribe them.  **May the lower court tailor the remedy of compelling appraisal by prescribing reasonable guidelines?**

## STATEMENT OF THE CASE

### I.    Introduction

Judicial enforcement of insurance appraisals is in disarray. Federal procedure granting such relief has grown arbitrary and uncertain. It should be neither. Despite raising new questions of procedure, including how a federal court may properly compel appraisal, this case does not demand novel solutions. This Court is aided by long-standing common law and federal equitable principles. In and out of Florida, compelling appraisal constitutes the injunctive remedy of specific performance, absent a contrary statute. Logically, Federal Rules of Civil Procedure 56 and 65 should govern access to such relief. These rules safeguard due process in granting pleaded remedies before trial and compelling parties to act in aid of such relief. Yet, these rules are routinely side-stepped in compelling appraisal in this circuit.

Instead, district courts increasingly mirror a worrisome practice spreading among Florida courts. Rather than compel appraisal upon a showing of entitlement to specific performance, courts do so upon mere motion, without injunctive relief needing to be pleaded or proven. Adding to the uncertainty, district courts even allow these motions despite the moving party having initially pled—or attempted to plead—entitlement to specific performance. The result is a novel and unprincipled procedure. Essentially, the practice affords the benefits of Rules 56 and 65 without imposing on movants any of the attending burdens.

4

Against this backdrop, Empire was compelled to appraise below. It appeals from this unprecedented procedural shortcut to regain the long-standing guarantees of federal law and equity.

## II.    Historical and Legal Background

### A.    Growth of Procedural Disarray in Compelling Appraisal

Appraisal is routinely sought in cases like this one, with condominium associations claiming millions of dollars in benefits allegedly owed. Despite the high stakes involved in insurance appraisals, federal courts are inconsistent in how they compel them. An overview of the current procedural disarray in compelling appraisal helps to understand why the court below resorted to a novel procedure, how the latter contrasts with historical practice, and what the stakes of this appeal are for Empire and similarly situated parties.

Previously rare and cost-effective, appraisals are now the expensive "new normal" in property insurance claims due to climbing litigation. *See* Johnny Parker, *Understanding the Insurance Policy Appraisal Clause: A Four-Step Program*, 37 U.

TOL. L. REV. 931, 931 (2006).[2] The "gold rush"[3] to sue for appraisal raises concerns about exaggerated or fraudulent repair and replacement estimates. *See* MICHAEL BOYER & BARRY ZALMA, PROPERTY INVESTIGATION CHECKLISTS: UNCOVERING INSURANCE FRAUD §1:42 (13th ed., 2021 update).[4]  Florida, of course, is ground zero for such litigation.[5]

---

[2] *See also* JONATHAN WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL 5, 60 (3d ed., 2015) (noting increased litigation and expense); Timothy Gray, Brian Odom, & Shannon O'Malley, *Benefits, Pitfalls, and Trends in Property Insurance Appraisal*, 44-SPG BRIEF 20, 22 (2015) (intended as cost-effective); Mark Ticer, *A Primer on Appraisal in Texas: One of the Most Frequently Abused and Misused Provisions in an Insurance Policy*, 5 J. TEX. INS. L. 41, 42 (2004) (historically intended to benefit insurer).

[3] *Cf.* Evan Stephenson & Kayla Scroggins-Uptigrove, *"Just Win, Baby": The Tenth Circuit Rejects the "Anything Goes" Tactics of the Hail-Litigation Gold Rush,* 96 DENVER L. REV. 267, 267, 276 (2019) (describing increase in federal storm litigation as "gold rush," defined as "when the law substantially creates or expands opportunities to make money by filing civil lawsuits, and plaintiffs' lawyers respond . . . by filing many new lawsuits that previously would not have been brought").

[4] *Cf. also* BAXTER DUNAWAY, 4 LAW OF DISTRESSED REAL ESTATE §44A:17 (2022 update) (55% of real estate appraisers reported being pressured to inflate value). One wonders what that figure is among insurance appraisers, "not governed by any industry standards." Charles Edwards, *An Appraisal of the Appraisal Remedy in Property Insurance*, 136 THE NAT'L REV. (Vol. XII) (May, 11, 2022).

[5] Florida homeowner insurance litigation represented 76.4% of such litigation nationwide in 2019. Amy O'Connor, *NAIC Data: Florida Property Lawsuits Total 76% of Insurer Litigation in U.S.*, INSURANCE JOURNAL (April 14, 2021). This has turned Florida into "a legal sinkhole," "threatening to swamp [insurers] even during years when there are no storms," impacting both industry profits and homeowner premiums. Ed Leefeldt, *Why Is Homeowners Insurance In Florida Such a Disaster?*, FORBES (Mar. 26, 2021) ("Florida insurers saw a profit of almost $800 million in 2014 dwindle to a net loss of $340 million in 2019[.]").

The Florida Supreme Court's decision in *Johnson* likely played a role in the proliferation of appraisals and related litigation. *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021 (Fla. 2002). Deviating from history,[6] *Johnson* allowed appraisers to decide damage causation, a coverage issue normally reserved for courts. Perhaps the Court did not understand it at the time, but allowing appraisers to determine causation is a practice that raises due process concerns. *See, e.g., Walnut Creek Townhome Ass'n v. Depositors Ins. Co.*, 906 N.W.2d 205, 205 (Iowa Ct. App. July 19, 2017) (McDonald, J., dissenting). *Johnson* also exponentially raised the stakes, giving appraisers the ability to directly or indirectly decide coverage issues in multi-million dollar cases.

A subsequent Florida Supreme Court case further compounded the stakes in appraisal. While *Johnson* expanded the authority of appraisers, the Florida Supreme Court then reduced their accountability and procedural safeguards in 2002, when it held that the Arbitration Code was inapplicable to appraisals. *Allstate Insurance Company v. Suarez*, 833 So. 2d 762 (Fla. 2002). With the onslaught of the 2005 and

---

[6] *Cf.* Timothy Gray et al., *Benefits, Pitfalls, and Trends in Property Appraisal*, 44-SPG BRIEF 20, 21 (2015) (historically, appraisals only invoked if agreement existed on existence and scope of damage). Alabama continues to adhere to the majoritarian interpretation of appraisal as excluding causation determinations, openly rejecting *Johnson*. *See Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382, 392 (Ala. 2007).

2006 hurricane seasons, Florida experienced a "significant rise" in appraisal demands ever since.[7]

As a result of *Johnson* and *Suarez*, the perception is that not only could appraisers settle the scope, cause, and value of a multi-million dollar loss, but they could also do it *however* they wish. Any claim may become a multi-million dollar one. Unsurprisingly, disputes often arise involving the procedural and substantive contours of appraisal to correct that perception.

Yet, Federal courts have grown procedurally unpredictable in compelling appraisal. Some require that appraisal be pleaded or proven as specific performance. *See, e.g., Biscayne Cove Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-23728-CIV, 2013 WL 2646828, at *3 (S.D. Fla. June 12, 2013). Others do not, denying that compelling appraisal is "remedial" at all. *See, e.g., Marbella at Spanish Wells 1 Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-641, 2022 WL 1302328, at *1 (M.D. Fla. May 2, 2022). Others leave procedural burdens to the moving party's choice. *See, e.g., Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-178, 2022 WL 1085541, at *6 (M.D. Fla. Jan. 26, 2022).

Similarly, some courts construe motions to compel appraisal as essentially seeking summary judgment. *See, e.g., Palmer v. Fidelity Nat'l Prop. & Cas. Ins.*

---

[7] Thomas Kos, *The Appraisal Process*, PROPERTY CASUALTY 360 (Nov. 2, 2007).

*Co.*, No. 13-80741, 2014 WL 12461372, at \*5 (S.D. Fla. Nov. 7, 2014). Others do

not. *See, e.g., Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins.*

*Co.*, No. 2:19-cv-81, 2019 WL 3852731, at \*2 (M.D. Fla. Aug. 16, 2019). Even the

same judge will occasionally equivocate on the issue. *Compare Creekside Crossing*

*Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-00136, 2020 WL

5973177, at \*4 (M.D. Fla. Sept. 2, 2020) (deeming "motion to compel appraisal . . .

presently equivalent to a summary judgment motion"), *with Creekside Crossing*

*Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-136, 2021 WL 2003007,

at \*1 (M.D. Fla. May 19, 2021) (deeming motion for summary judgment "not the

proper vehicle to address appraisal").

Relatedly, inconsistency also abounds in enforcing ensuing awards. Some

courts properly allow insurers to contest elements of coverage post-appraisal. Others

do not. A minority in this circuit continues to advocate the analogy of appraisals to

arbitration, "confirming" awards the same way. On this, "the federal courts . . . have

[also] muddied the waters." GREGORY DELL ET AL., FLORIDA INSURANCE LAW &

PRACTICE §14:8 (2021-2022 ed.).[8]

---

[8] *Compare, e.g., Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F.
Supp. 2d 1357 (M.D. Fla. 2003) (disallowing insurer from contesting elements of
coverage post-appraisal), *with Liberty American Ins. Co. v. Kennedy*, 890 So. 2d
539, 541 (Fla. 2d DCA 2005) (disapproving of *Three Palms Pointe* and allowing
challenge of coverage elements post-appraisal), *and Fla. Gaming Corp. v. Affiliated
FM Ins. Co.*, No. 07-20897-Civ-Ungaro, 2008 WL 11407210, at \*1 n.1 (S.D. Fla.
Apr. 21, 2008) (following *Kennedy*).

Since *Suarez*, a novel practice has emerged whereby federal courts increasingly compel appraisal upon mere motion, a shadow of the process traditionally required for specific performance. And absent from federal "equity jurisdiction," embodied by Rule 65. *See Ferrero v. Assoc. Materials Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991).[9] The court below relied on this novel practice in refusing to require a specific performance showing.

## B.    The Novel Process Defies Historical Practice

There is nothing normal to this "new normal" of compelling appraisal upon mere motions and argument of counsel. Although appraisal "has been a part of property insurance for at least 200 years," Gary Williams, *Winning the Property Insurance Appraisal*, 45-OCT JTLATRIAL 22, 26 (2009), this novel practice enforcing it is recent everywhere.

Historically, courts rarely compelled appraisal. In theory, they could through specific performance. *Red Cross Line v. Atlantic Fruit Co.*, 264 U.S. 109, 120-121 (1924). In practice, they did not. "[S]pecific performance [wa]s a departure from common law." *Hepburn et al. v. Auld. et al.*, 5 Cranch 262, 279 (1809). And breach of contract damages were available: a trial in lieu of appraisal could determine the

---

[9] *Cf. also Western Surety Co. v. PASI of LA, Inc.*, 334 F.Supp.3d 764, 799 (M.D. La. Sept. 25, 2018) ("[T]he Court cannot enforce state law allowing specific performance absent proof of . . . Rule 65's requirements.").

amount of loss. *See* 44 A.L.R.2d 850 §1 (1955) (insurer's failure to appraise "abrogate[d] the appraisal clause," freeing insured to "institute an action for damages for the breach").[10] So too in Florida. *Cf. Hanover Fire Ins. Co. v. Lewis*, 10 So. 297, 302 (Fla. 1891) (relying on *Gauche v. London & L. Ins. Co.*, 10 F. 347, 356 (E.D. La. 1881) (explaining that "'[i]f two persons, whether in the same or in a different deed from that which creates the liability, agree to refer the matter upon which the liability arises to arbitration, *that agreement does not take away the right of action*.'") (emphasis added)). Although some courts barred suit unless appraisal took place,[11] consequential damages were available for wrongful refusal. *See Biddle*, 24 F. Cas. at 256.[12]

Despite the "dearth of direct authority" on some aspects, 44 A.L.R.2d 850 §1 (1955), enough exists: appraisal was either not specifically performable at all, or was in theory but not in practice, due to available contractual damages. *See* Alfred Hayes,

---

[10] *See also Cedant Corp. v. Forbes*, 70 F.Supp.2d 339, 343 (S.D.N.Y. 1999); *Saba v. Homeland Ins. Co. of America*, 159 Ohio St. 237, 248-249 (Ohio 1953) (Hart, J., dissenting) (explaining common law refusal); *Tscheider v. Biddle*, 24 F. Cas. 253, 255 (E.D. Miss. 1877) (noting availability of damages).

[11] *Holmes v. Richet*, 56 Cal. 307, 313, 315 (Cal. 1880) (acknowledging failure of policy to make it a condition precedent, but still deeming appraisal as such).

[12] *Biddle*, 24 F. Cas. at 256. *Cf. also Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6-7 (acknowledging insured's "'chicken-and-egg' dilemma" but noting adequate remedy in insured's bad faith claim).

*Specific Performance of Contracts for Arbitration or Valuation*, 1 CORNELL L. REV. 225, 225 (1916) ("doctrine that equity will not specifically enforce contracts for . . . valuation" "almost uniformly adhered to").[13]

Today, most jurisdictions continue to enforce appraisal through specific performance. JONATHAN WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL 344-345, 349 (3d ed., 2015). However, some did not allow such specific performance absent an enabling statute. *See Happy Hank Auction Co. v. American Eagle Fire Ins. Co.*, 1 N.Y.2d 534, 538 (N.Y. 1956).[14] The proliferation of arbitration statutes caused

---

[13] *See also* Sidney Simpson, *Specific Enforcement of Arbitration Contracts*, U. PENN. L. REV. 160, 161, 176 (1934) (noting refusal to enforce even "in spite of the manifest inadequacy of the legal remedy," and explaining any change must be legislated); Wesley A. Sturges & William W. Sturges, *Appraisals of Loss and Damage Under Insurance Policies*, 13 U. MIAMI L. REV. 1, 2 (1958) (appraisal "enforcement" "at common law" "suggests, of course, specific performance of the provision" through suit "to obtain a[n] . . . injunctional order that the non-complying party proceed with appraisal," to force the appointment of appraisers or umpires, or for damages).

[14] *See also Penn Central Corp. v. Consolidated Rail Corp.*, 56 N.Y.2d 120, 129 (N.Y. Ct. App. 1982) (deeming specific performance of appraisal "a remedy not available at common law"). *Happy Hank's* view of the common law of appraisal was first contradicted by *Saba*, 159 Ohio St. at 237. Even critics of *Happy Hank* admit that *Saba*'s approach was "new . . . within traditional equity jurisprudence." *See* Sturges, *supra* at 9, 13. *See also* 112 A.L.R. 9 (1938) (noting case law disproving Sturges' claims of "insufficient authority" on issue); Richard Coulson, *Is Contractual Arbitration an Unconstitutional Waiver of the Right to Trial by Jury in Oklahoma?*, 16 OKLA. CITY U. L. REV. 1, 11 (1991) (labeling "common law of arbitration" "monolithic").

further confusion in jurisdictions where they do not expressly include appraisals.[15] And yet, "[t]he distinction . . . can have ramifications on the authority of the court." 15 COUCH ON INSURANCE §209:10 (2021 update).[16]

Despite the "numerous courts around the country . . . tak[ing] guidance from cases and statutes relating to arbitration, insurance appraisal is actually distinct." WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL at 21. Most states recognize this. *Id.* at 22-24. The analogy has yielded "serious consequences" nationwide. *Id.* at 37.

So too in this circuit. Pre-*Suarez* cases applying the Arbitration Code to appraisals caused "confus[ion] . . . with somewhat unpredictable consequences." WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL at 23. The analogy is motivated by policy considerations. *Id.* at 39. Against *Suarez*, courts in this circuit continue to compel appraisal by relying on pre-*Suarez* cases. Even when Florida

---

[15] *See* Amy M. Coughenourd, *Appraisal and the Property Insurance Appraisal Clause—A Critical Analysis: Guidance and Recommendations for Arizona*, 41 ARIZ. ST. L.J. 403, 413 (2009). Nor do appraisals come within the Federal Arbitration Act. *Salt Lake Tribune Publ'g Co., LLC v. Management Planning, Inc.,* 390 F.3d 684 (10th Cir. 2004); *Evanston Ins. Co. v. Cogswell Properties, LLC*, 683 F.3d 684 (6th Cir. 2012).

[16] Timothy P. Law & Jillian L. Starnovicha, *What Is It Worth? A Critical Analysis of Insurance Appraisal*, 13 CONN. INS. L.J. 291, 298 (2006-2007) (issue "impact[s] the applicability of state and federal laws, as well as the procedural protections afforded").

courts increasingly warn that, in the appraisal context, "the analogy [to the Code] [i]s misplaced." *Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d at 712.

The novel practice of compelling appraisal has become noticed. *People's Trust Ins. Co. v. Nowroozpour*, 277 So. 3d 135, 136 (Fla. 4th DCA 2019) (deeming, in *dicta*, mere motion to compel appraisal as "traditional" as pleading and proving specific performance). Yet, it is not traditional. And it is foreign to federal procedure. *See Mapleton Processing, Inc. v. Society Ins. Co.*, No. C12-4083-LTS, 2013 WL 3467190, at *24 (N.D. Iowa July 10, 2013) (disavowing such power).[17]

This new practice highlights why "[f]ew premises are recited so . . . reflexively, as 'specific performance is an extraordinary remedy.'" David Frisch, *Commercial Common Law, the United Nations Convention on the International Sale of Goods, and the Inertia of Habit*, 74 TLN. L. Rev. 495, 541 (1999). Historically, those seeking specific performance of non-land contracts "face[d] an uphill battle in American courts" given "the presumption in favor of money damages." Jason Kirwan, *Appraising A Presumption: A Modern Look at the Doctrine of Specific Performance In Real Estate Contracts*, 47 WM. & MARY L. REV. 697, 701 (2005). Today, it looks more like a race down-hill. At least in the insurance context.

---

[17] *See also Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6 n.5 (same); *Battles, Inc. v. Nationwide General Ins. Co.*, No. 3:19-cv-13-DML-DCP, 2020 WL 6365513, at *4-*5 (E.D. Tenn. March 10, 2020) (same).

## III.    Factual and Procedural Background[18]

### A.    The Property and the Policy

This case involves a Hurricane Irma claim that Empire investigated and paid in the amount it believed owed. Positano, a residential complex spanning five buildings, stands on Florida's southwestern shore in Naples [R. 672 (¶4)]. Each building is separately scheduled and insured under a policy, number ECL9490628-02 (the "Policy") ($10,053,670 total value) [R. 578-580]. And each is subject to a 3% deductible (totaling about $301,610.10). *Id.*

The Policy pays Replacement Cost coverage benefits by default after repairs are completed. The Policy also allows Positano to present instead a ACV claim without having to perform repairs:

> **3. Replacement Cost**
>
>     **a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.
>
>     [. . .]
>
>         **c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

---

[18] All references to the Record on Appeal—the Appendix to Empire's merits brief to be filed shortly—are as follows: "R. at _," or "R. at _ (¶_)."

[R. 65]. The Policy also contains an appraisal provision [R. 609], which reads:

**Mediation Or Appraisal**

If we and you:

[. . .]

**B.** Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

## B.   Empire Investigates and Adjusts the Claim

Positano first notified Empire of storm damage to its property as a result of Hurricane Irma in March of 2018, seven months after the loss [R. 673 (¶6)]. Empire investigated. It inspected the property that same month [R. 673 (¶7), 679]. The following month, Empire explained that its engineers found damage only to some buildings and that it fell under the applicable deductibles [R. 682]. Empire requested Positano to provide supplemental documentation if it disagreed [R. 683]. Almost a year later, Positano first submitted a "partial" sworn proof of loss ("POL") seeking only RCV [R. 673 (¶9)] for a net $194,089.90 [R. 215]:

5.  **Total Insurance:** The total amount of insurance upon the property described by this policy was, at the time of the loss, $ $10,053,670.00
6.  The full cost of repair or replacement is ................................$ 495,700.00  Partial
7.  Applicable depreciation or betterment is ...............................$  0.00
8.  Actual cash value loss is (Line 6 minus Line 7) ..........................$ 495,700.00  Partial
9.  Less deductibles and /or participation by the insured  ................$ 301,610.10
10. The Amount Claimed under the above numbered policy is  .........$ 194,089.90  Partial

Empire rejected the POL [R. 673 (¶10)]. The next month, in May of 2019, Empire

denied coverage as a whole for any damage to two of the five buildings [R. 674

(¶11), 692]. Empire also sought to re-inspect [R. 679].

Five months later, Positano submitted a new POL for a net $1.8 million in

RCV benefits only [R. 649]:

5.  **Total Insurance:** The total amount of insurance upon the property described by this policy was, at the time of the loss, $ $10,053,670.00
6.  The full cost of repair or replacement is ................................$ 2,140,561.04
7.  Applicable depreciation or betterment is ...............................$ N/A
8.  Actual cash value loss is (Line 6 minus Line 7) ..........................$ 2,140,561,.04
9.  Less deductibles and /or participation by the insured  ................$ 301,610.10
10. The Amount Claimed under the above numbered policy is  .........$ 1,838,950.94

Empire made undisputed actual cash value ("ACV") payments totaling

$39,266.96 for those buildings it deemed damage based on its own estimate [R. 697].

It even agreed to Positano's request for a 180-day extension of the two-year

limitation to conduct repairs and incur ordinance or law ("O&L") expenses [R. 674

(¶12)]. Despite the extension, Positano did not complete or pay for the allegedly

needed repairs or replacements [R. 674 (¶13)]. Empire did not accept coverage for

any windows and doors claimed. *Id.* at ¶14. It also explained to Positano that no

replacement cost value ("RCV") or O&L expenses could be owed absent paid-for,

completed replacements. *Id.* at ¶15.

17

## C.  Positano Sues Empire

Positano then sued Empire in January of 2021, seeking specific performance of appraisal and breach of contract damages [R. 23-26]. Empire moved to dismiss, arguing that the complaint failed to sufficiently plead specific performance or other injunctive relief, as well as a proper breach of contract claim [R. 324]. Although the lower court disagreed with Empire on specific performance, it dismissed the complaint for failing to allege breach of contract [R. 351-52].

Positano filed a second amended complaint, seeking specific performance, breach of contract damages, and declaratory judgment [R. 446]. Empire answered it, raising among other defenses that: (1) Positano had never completed or paid for the replacements in the amount sought [R. 544-47, 551-52]; (2) appraisal was inappropriate for buildings for which Empire wholly denied coverage [R. 549]; and (3) the complaint failed to sufficiently state a claim for specific performance relief [R. 554-55].

Positano immediately moved to compel appraisal [R. 557]. Empire opposed it, arguing that: (1) compelling appraisal constituted specific performance relief that Positano failed to plead and show [R. 652, 657]; (2) compelling appraisal constituted relief that should be obtained through a summary judgment showing [R. 660]; (3) appraisal was not appropriate for buildings for which Empire denied coverage [R. 661]; and (4) certain guidelines were necessary to make appraisal consistent with the

Policy and due process [R. 662, 667]. Positano did not reply to Empire's response [R. 4]. It belatedly requested a hearing instead [R. 701], which the lower court denied [R. 704]. Still, the Honorable Magistrate issued a report recommending appraisal [R. 706].

Empire objected to the Magistrate's conclusions as to each of its arguments against appraisal [R. 735]. Positano opposed the objections, for the first time addressing the arguments Empire raised before the Magistrate [R. 760]. The lower court denied Empire's timely request for leave to reply to Positano's arguments [R. 774]. It then compelled appraisal, adopting the Magistrate's report and overruling Empire's objections [R. 776].

Empire since appealed from the order [R. 787]. After considerable briefing [R. 829, 840, 848, 858], the district court has not yet ruled on Empire's pending motion to stay the matter pending the appeal [R. 5].

## STATEMENT OF THE STANDARD AND SCOPE OF REVIEW

This Court reviews *de novo* all legal conclusions in the orders[19] compelling appraisal. *See Jacobs v. Nationwide Mut. Fire Ins. Co.*, 236 F.3d 1282, 1285 (11th Cir. 2001). Other circuits agree. *See Fireman's Fund Ins. Co. v. Steele Street Limited II*, 2022 WL 39392, at *5 (10th Cir. Jan. 5, 2022) (reviewing interlocutory order compelling appraisal *de novo*); *Hayes v. Allstate Ins. Co.*, 722 F.2d 1332, 1335 (7th Cir. 1983) (reviewing propriety of interlocutory appraisal order as legal ruling, not discretionary one). *Cf. also Milligan v. CCC Information Services, Inc.*, 920 F.3d 146, 152 (2d Cir. 2019) (reviewing *de novo*); *Nygaard v. Property Damage Appraisers, Inc.*, 779 Fed. App'x 474, 475 (9th Cir. 2019) (same).

Additionally, *de novo* review of all components of the orders is appropriate because Empire sufficiently objected to the Honorable Magistrate's report below as one made under 28 U.S.C. 636(b)(1)(B) (requiring district court to review *de novo* all portions) and Fed. R. Civ. P. 72(b)(3) (same). *Cf. J.P.F.D. Investment Corporation v. United Specialty Ins. Co.*, 769 Fed. App'x 698, 703 (11th Cir. 2019) (noting that Fed. R. Civ. P. 72(b) applied to preserve *de novo* review district court's order on appraisal objections); *Rodriguez v. Powell,* 853 Fed.App'x 613, 618 (11th

---

[19] Both rulings—the magistrate and the district court judge's—are before this Court. *See, e.g., Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 661 (7th Cir. 1998).

Cir. 2021) (same); *JM Walker LLC v. Acadia Ins. Co.*, 356 Fed. App'x 744, 748 (5th Cir. 2009) (same).

## SUMMARY OF THE ARGUMENT

**First, a federal court should not compel appraisal absent sufficient pleading and proof of entitlement to specific performance.** Florida law deems compelling appraisal specific performance relief. Federal courts may only exercise equitable powers (embodied by Rule 65) in affording it. Here, the lower court incorrectly asserted that it could compel appraisal as something *other than* specific performance, without pleading or other requirements governing contractual remedies or anchored in federal procedure. The court's alternative finding, that Positano's motion satisfied such burden even if they applied, was also erroneous.

**Second, a federal court should not compel appraisal without adjudicating the breach of the provision through summary judgment.** The specific performance of a contract is a remedy that presupposes its pleading and proof of a party's breach of the provision. Courts may not grant insufficiently pled relief or do so without adjudicating a breach. Here, the lower court did both.

**Third, a federal district court may not compel appraisal of buildings for which coverage was wholly denied.** Each building Positano comprises is separately insured under the Policy. Florida law does not allow the appraisal of buildings for which an insurer has wholly denied coverage. Despite Empire's denial of coverage to some buildings, the court below still ordered the appraisal of all.

22

**Lastly, a federal court may prescribe reasonable guidelines for appraisal in tailoring the remedy of compelling it.** Specific performance constitutes relief that requires discretion and tailoring under Rule 65. A court may also resort to its inherent powers in imparting minimal instructions to safeguard the integrity and efficiency of the appraisal process, as well as the parties' due process. Except for requiring an itemized award, the court disavowed having power to consider any other guidelines.

## ARGUMENT

### I.    Compelling Appraisal without a Showing of Specific Performance was Procedurally Improper

#### A.    Compelling Appraisal Constitutes Specific Performance

Positano should have sufficiently alleged and proven entitlement to specific performance under Rule 65. It did not. Instead, the court erroneously denied that compelling appraisal is "remedial" [R. 779], upholding the Magistrate's conclusion that Positano was "not required to plead and prove . . . specific performance" [R. 718]. All despite the "persuasive value" of Empire's authorities [R. 717].

First, the "right to compel appraisal" is enforceable through "a claim for specific performance of policy obligations" in Florida. *Nowroozpour*, 277 So. 3d at 136. *See also People's Tr. Ins. Co. v. Vidal*, 305 So. 3d 710, 715 (Fla. 3d DCA 2020) (same).[20] Compelling appraisal constitutes a discretionary remedy that must be pleaded or waived. *See People's Trust Ins. Co. v. Fernandez*, 317 So. 3d 207, 211 (Fla. 3d DCA 2021) (referring to appraisal as "remedy . . . [that] upholds the terms of the policy"); *Vidal*, 305 So. 3d at 715 (insurer sufficiently invoked appraisal in counterclaims).[21]

---

[20] *Cf. also Twelfth Ave. Investments, Inc. v. Smith*, 979 So. 2d 1216, 1220 (Fla. 4th DCA 2008) (appraisement of value in real estate context constituted specific performance).

[21] *Cf. Ruckdeschel v. People's Trust Ins. Co.*, 327 So. 3d 311, 314 (Fla. 4th DCA 2021) (reversing grant of motion to compel repairs where insurer never pleaded in

This Court has noted as much. *See, e.g., Anoushfar v. Lexington Ins. Co.*, No. 21-11244, 2021 WL 4848073. at \*7  (11th Cir. Oct. 18, 2021) (insured "s[ought] specific performance in the form of an order compelling . . . appraisal"). District courts in this circuit agree. *See Biscayne Cove Condo. Ass'n, Inc.*, 2013 WL 2646828, at \*3.[22]

Other federal courts concur. *See Vista Pointe Townhome Ass'n Inc. v. Auto-Owners Ins. Co.*, No. 16-cv-0973, 2018 WL 1773407, at \*6 (D. Colo. April 13, 2018).[23] Even scholarship so believes. *See* 16 COUCH ON INSURANCE § 232:170 (3d

---

answer or counterclaim a request of specific performance of its option to repair); *Todd v. Hyzer*, 18 So. 888, 890 (Fla. 1944) ("[S]pecific performance is not a matter of right, but . . . determined from all the facts and circumstances.").

[22] *See also Residences at European Village Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 3:19-cv-1490, 2020 WL 5948314, at \*4 (M.D. Fla. July 17, 2020) (same); *Parkway Baptist Church, Inc. v. Guideone Elite Ins. Co.*, No. 10-23965, 2011 WL 13099891, at \*3 (S.D. Fla. Sept. 11, 2011) (same); *Creekside Crossing Condo. Ass'n, Inc. v. Empire Indent. Ins. Co.*, No. 2:20-cv-136, 2020 WL 1904011, at \*1 (M.D. Fla. Apr. 17, 2020) (same).; *La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*, 733 F.Supp.2d 1332, 1334 (S.D. Fla. 2010) (denying appraisal for failure to plead and prove specific performance); *Saltponds Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 20-CV-10063-JEM, 2020 WL 6875747, at \*2 (S.D. Fla. Oct. 26, 2020) (dismissing count seeking specific performance of appraisal where coverage denied).

[23] *See also McCoy v. American Family Mut. Ins. Co.*, 189 F.Supp.3d 896, 900 (D. Minn. 2016) (motion to compel appraisal seeks specific performance despite parties' failure to characterize it as such); *Woodward v. Liberty Mut. Ins. Co.*, No. 3:09-cv-0228, 2010 WL 1186323, at \*3 (N.D. Tex. Mar. 26, 2010) (motion to compel appraisal enforces appraisal clause through specific performance); *St. Panteleimon Russian Orthodox Church v. Church Mut. Ins. Co.*, No. 13-1977, 2013 WL 6190400, at \*3 (D. Minn. 2016) (motion to compel appraisal essentially a motion seeking

ed., 2021) ("A policy's requirement for an appraisal of a loss may be specifically enforced.").[24]

Second, a federal court's equity jurisdiction to grant specific performance, embodied by Rule 65, requires a showing of injunctive relief. *Compare Ferrero*, 923 F.2d at 1448 (federal "equity jurisdiction" incorporated by Rule 65), *with Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1223, 1225 (10th Cir. 2009) ("Specific performance is an equitable remedy, and an interim grant of specific relief is a preliminary injunction.").[25]

---

specific performance order); *Sauer v. Xerox Corp.*, 17 F.Supp.2d 193, 201 (W.D. N.Y. 1988) (describing common law power to "order specific performance of an appraisal"); *Mapleton Processing, Inc.*, 2013 WL 3467190, at *24 (denying appraisal for failure to plead and show specific performance entitlement); *Battles, Inc.*, 2020 WL 6365513, at *4-*5 (same).

[24] *See also* Sturges, *supra* at 2 (explaining that "enforcement" of appraisal "suggests, of course, specific performance of the provision" through suits seeking an injunction, the appointment of appraisers or umpires, or for damages); Hayes, *supra* at 225; Simpson, *supra* at 160-161; Amy Schmitz, *Ending A Mud Bowl: Defining Arbitration's Finality Through Functional Analysis*, 37 GA. L. REV. 123, 169 (2002) ("Under contract law, courts may enforce valid appraisal agreements and determinations by ordering damages, specific performance, or other contract remedies."); Law & Starinovich, *What Is It Worth? A Critical Analysis of Insurance Appraisal*, *supra* at 315-16 (compelling appraisal involves preliminary injunction).

[25] *See also* Stephen N. Subrin, *How Equity Conquered Common Law: The Federal Rules of Civil Procedure in Historical Perspective*, 135 U. PENN. L. R. 909, 920 (1987) (specific performance incorporated by Rule 65); *PASI of LA, Inc.*, 334 F.Supp.3d at 799 ("[T]he Court cannot enforce state law allowing specific performance absent proof of . . . Rule 65's requirements.").

This is supported by the fact that, for purposes of appeals under Section 1292(a)(1), courts analyze whether a specific performance order "is injunctive in character" under Rule 65. *See Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1246 (11th Cir. 2012) (Pryor, C.J., concurring) (quoting *Petrello v. White*, 533 F.3d 110, 114 (2d Cir. 2008)). Thus, two other circuits deem orders compelling appraisal injunctive. *See Steele Street Limited II*, 2022 WL 39392, at *5 (holding order "requir[ing] . . . adher[ance] to the Policy's Appraisal Provision . . . substantively an injunctive order"); *Hayes*, 722 F.2d at 1335 (same). Still, the lower court refused to hold Positano to the strictures of injunctive relief.

Third, the reasons proffered by the district court for its refusal are neither correct nor persuasive. Relying on no precedent, it concluded that compelling appraisal is not remedial, but the same as discovery relief [R. 779]. This contravenes Florida and federal precedent, as well as nationwide common law. *See, e.g., Mapleton Processing, Inc.*, 2013 WL 3467190, at *24 ("A court can compel parties to comply with their discovery obligations. Appraisal, however, is a right created by contract, not a discovery procedure."). The court relied solely on a fellow district court judge's ruling, currently on appeal [R. 779-80].

The court also asserted procedural power to compel appraisal based solely on its "subject-matter jurisdiction" [R. 780]. Yet, this side-steps Rule 65 and the

27

exercise of equitable powers it governs. Nor is the mere fact that Empire's argument has not succeeded with other district court judges legally persuasive [R. 780].

Fourth, nor does the Magistrate's reasoning support the court's ruling. For example, he concluded that Positano did not need to plead or prove specific performance because "parties can seek appraisal through breach of contract and declaratory judgment actions" [R. 719 (alluding to *Castillo at Tiburon Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-468, 2021 WL 4438370 (M.D. Fla. Sept. 28, 2021), and *Creekside Crossing Condo. Ass'n, Inc.*, 2020 WL 5973177)].[26]

Yet, *Creekside* does not provide a rationale or rely on authority for its proposition. *Cf. Calzadilla*, 2019 WL 22455518, at *4 (court action taken "without analysis" "is not persuasive").[27] And *Castillo* incorrectly disagreed that compelling appraisal constituted injunctive relief. 2021 WL 4438370, at *1-*2. Neither case involved a motion to compel appraisal or the identical specific performance argument made in this case. *Creekside* even ruled that the insured *did* sufficiently allege the elements of specific performance to compel appraisal. 2021 WL 1610092,

---

[26] The Honorable Magistrate incorrectly cited to a different, 2020 *Castillo* ruling, but clearly meant the 2021 *Castillo* order.

[27] *See Battles, Inc.*, 2020 WL 6365513, at *5 (denying appraisal while sitting in diversity jurisdiction and explaining that, although "Plaintiff cites several cases, arguing that motions to compel the appraisal process are regularly considered by courts . . . [t]hese cases, however, do not discuss the proper procedure to bring such motions"); *Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6 n.5 (similarly denying motion).

at *2. Despite acknowledging that specific performance is a separately pleaded claim for relief traveling under breach of contract or declaratory action, the court inferred from this that a party may *choose* to seek appraisal through *either* specific performance *or* a mere motion without pleading such relief. *Id at *1.* This does not follow. And the fact that it is unsettled whether someone "must" seek specific performance of appraisal is of no moment [R. 719].

The Magistrate's conclusion that a party can choose between these two ways to seek appraisal ultimately derives from *Nowroozpour* [R. 720]. There, the panel noted that "it may [still] be more traditional" for a party to merely "move to compel an appraisal to seek enforcement of the policy provisions." *Nowroozpour*, 277 So. 3d at 136. This was not its holding. *Cf. Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 737 (2007) (courts "not bound to follow . . . dicta in a prior case in which the point now at issue was not fully debated"); *Hale v. Johnson,* 845 F.3d 224, 228 n.1 (6th Cir. 2016) ("[D]icta" "lack[ing] . . . analysis on [an] issue . . . is unpersuasive.").

Notably, *Nowroozpour* has no bearing on federal procedure. Whatever the recent traditions of Florida courts of general jurisdiction, this issue turns on a question of procedure among federal courts of limited jurisdiction. "In [a] diversity

case," federal courts "apply federal procedural law." *J.P.F.D. Investment Corporation,* 769 Fed. App'x at 702 n.3.[28]

The Magistrate also reasoned that, despite *Suarez*, "[a]ppraisal provisions" are "generally . . . treated as arbitration provisions" [R. 720, 722 (citing, among other cases, *Three Palms Pointe, Inc.*, 250 F.Supp.2d at 1362)]. But this is a matter of federal procedure. And even if Florida law controlled, no aspect of appraisals is subject to its Arbitration Code. This Court need not "make a[] [new] *Erie* guess that the Florida Supreme Court would not apply [a] statute" here like the Arbitration Code. *cf. McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002). It did so long ago. *Southern Flapjacks*. *See Columbia Cas. Co. v. Southern Flapjacks, Inc.*, 868 F.2d 1217, 1223 (11th Cir. 1989) ("The Florida Arbitration Code applies . . . not to appraisals.").[29] Florida precedent has since validated *Southern Flapjacks*.

*Suarez* "held that the Florida Arbitration Code is not applicable to appraisal cases." *Citizens Prop. Ins. Corp. v. Cuban-Hebrew Congregation of Miami, Inc.*, 5

---

[28] *See also Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6 n.5 (refusing to compel appraisal on similar grounds); *Battles, Inc.*, 2020 WL 6365513, at *4-*5 (denying appraisal because diversity jurisdiction required application of federal procedural law); *Mapleton Processing, Inc.*, 2013 WL 3467190, at *24 (expressing similar concerns).

[29] Early precedent deemed appraisals outside the scope of arbitration statutes. *See, e.g., City of Omaha v. Omaha Water Co.*, 218 U.S. 180, 192-99 (1910) (holding appraisal was not an arbitration); *Collins v. Collins*, 53 Eng. Rep. 916, 919 (1858) (same).

So. 3d 709, 712 (Fla. 3d DCA 2009). Since *Suarez*, Florida's appellate courts have continued to curb all recourse to the Code. *See State Farm Fla. Ins. Co. v. Gonzalez*, 76 So. 3d 34, 37 (Fla. 3d DCA 2011) (rejecting "petition to confirm" appraisal award as if it were an arbitration award) (*citing Florida Insurance Guaranty Ass'n v. Olympus Ass'n*, 34 So.3d 791 (Fla. 4th DCA 2010)); *Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d 1226, 1230 (Fla. 3d DCA 2013) ("The Florida Arbitration Code is not applicable to appraisal awards."); *Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d at 712 (reversing trial court's refusal, based on Arbitration Code, to apply deductibles to appraisal award).

The trend is clear. For example, writing for the majority in an opinion before his ascension, Justice Canady expressly disapproved of *Three Palms Pointe's* refusal to allow the challenge of coverage for elements of loss after appraisal. *Kennedy*, 890 So. 2d at 541. Every other district with an opinion agrees with *Kennedy*. *See American Capital Assurance Corp. v. Leeward Bay at Tarpon Bay Condo. Ass'n, Inc.*, 306 So. 3d 1238, 1243 (Fla. 2d DCA 2020); *Williams v. Citizen Prop. Ins. Co.*, 285 So. 3d 334, 335 (Fla. 4th DCA 2019); *Safepoint Ins. Co. v. Hallet*, No. 5D20-206, 2021 WL 2599656, at *2 (Fla. 5th DCA, June 25, 2021); *Olympus Ass'n*, 34

31

So. 3d 791; *Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d at 1229. As do most district court rulings in this circuit.[30]

Although this Court would "write[] in . . . disappearing ink" on the issue, *McMahan*, 311 F.3d at 1079, writing in Florida is on the wall: "the analogy [to the Code] [i]s misplaced." *Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d at 712. Analogy is a tool of reasoning, not a source of power. An Article III court cannot exercise Rule 65 powers outside its bounds, anchored in mere reasoning. To say that "*Suarez* did not . . . overturn Florida's prior policy and precedent" of enforcing appraisal through motions to compel arbitration [R. 721], or that federal courts "maintain[] the ability to compel appraisal outside of granting specific performance" disregards the legal trend just described [R. 722].[31]

---

[30] Although "federal district courts have divided as to whether . . . to follow *Three Palms Pointe* or . . . *Kennedy*," *Fouladi v. Geovera Specialty Ins. Co.*, No. 6:18-cv-326-Orl-40KRS, 2018 WL 3761039, at *6 n.4 (M.D. Fla. April 30, 2018), a growing majority of cases in this Circuit *expressly* side with *Kennedy*. *See Fla. Gaming Corp. v. Affiliated FM Ins. Co.*, No. 07-20897-Civ-Ungaro, 2008 WL 11407210, at *1 n.1 (S.D. Fla. Apr. 21, 2008); *Sands on the Ocean Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 05-14362-Civ, 2009 WL 790120, at *2-*3 (S.D. Fla. Mar. 24, 2009); *Jin Zhi Star Lt. LLC v. American Zurich Ins. Co.*, No. 08-61101-Civ-Moreno/Torres, 2011 WL 13110260, at *3-*4 (S.D. Fla. June 16, 2011); *Grove Towers Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 19-24199-Civ-Cooke/Goodman, 2020 WL 4561599, at *4 (S.D. Fla. June 9, 2020).

[31] Should any aspect of this issue turn on a question of Florida law, Empire respectfully requests this Court to certify it to the Florida Supreme Court. *See, e.g., Anderson v. Auto-Owners Ins. Co.*, 172 F.3d 767 (11th Cir. 1999) (certifying question involving insurance policy), *certified question answered by Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29 (Fla. 2000); *Sun Ins. Office, Ltd. v. Clay*, 133

Lastly, the lower court's practice has arbitrary and unfair consequences. Affording the same relief whether Positano chose to plead and prove it as specific performance or not, the court allows Positano to *choose* between a higher and lower burden to obtain the *same* thing. Nothing comparable is done in other legal contexts. It is the nature of the relief that triggers the procedural mechanisms procuring it, not the choice of vehicle that redefines such relief. The matter is all the worse where, as here, Positano did choose to plead specific performance [R. 449-452 (¶¶25-44)] only to turn around and choose *again* a different vehicle. A concise blueprint of what appraisal litigation should procedurally look like may be useful.[32]

---

So. 2d 735, 742 (Fla. 1961)("It is now well established procedure for a federal court to abstain from deciding the merits of a case so as to afford the state courts a reasonable opportunity to construe a state statute involved in the case.").

[32] Ordinarily, compelling appraisal should be sufficiently pleaded as specific performance. This allows the insurer to raise equitable and other defenses. A motion to compel appraisal should require a showing under Rule 65. The movant must meet the high burden of specific performance. As argued below, it should also seek summary judgment on that relief as pleaded. If any award is not paid, then the movant (often the insured) may file a supplemental pleading alleging that the non-movant (often the insurer) has breached the policy by failing to make payment. *Cf. J.P.F.D. Investment Corp.*, 769 Fed. App'x at 705-706 ("If the parties cannot agree on the covered loss amount, they must undergo the contractual appraisal before [the insurer's] obligation to pay . . . ripens."). The parties may then continue litigation of coverage post-appraisal, as required by *Kennedy*. And the movant may even seek summary judgment on the amount owed. *Mango Hill #6 Condo. Ass'n, Inc.*

33

**B.      Positano Failed to Plead and Show Entitlement to Specific Performance**

Equally wrong was the lower court's failure to analyze whether Positano sufficiently pleaded and showed entitlement to the "extraordinary" relief of specific performance [R. 778-80]. The Honorable Magistrate's alternative conclusion that Positano met such burden was no less incorrect [R. 718].

First, the Magistrate concluded, without analysis and on no authority, that the required showing of specific performance was disposed of by the prior order denying Empire's motion to dismiss that count [R. 718]. Even if correct, the order would only extend to the sufficiency of the complaint, not the *separate* showing of proof by motion. However, the order's analysis was incorrect.

"Specific performance shall only be granted when 1) the plaintiff is clearly entitled to it, 2) there is no adequate remedy at law, and 3) the judge believes that justice requires it." *Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005) (citation omitted). *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Here, Positano alleged that: (1) the Policy provided for appraisal [DE 39 at ¶ 28]; (2) Positano demanded it [R. 450 ¶¶ 28, 31]; (3) Empire ignored that demand [R. 451 ¶¶ 36, 43]; (4) there is no adequate remedy at law in the absence of an order compelling it [R. 451 at ¶ 37]; (5) in the absence of specific performance, Positano

would suffer irreparable harm [R. 451 at ¶ 38]; (6) Positano has a clear right to enforce appraisal [R. 451 at ¶ 40]; and (7) justice requires compelling it [R. 451 at ¶ 44]. These allegations lacked the requisite factual predicate for specific performance.

Even if the first three allegations were deemed sufficient to state the first legal element, the rest fail to support the remaining legal elements. In alleging no remedy at law, Positano merely recites the requirement. And in circular fashion, stating that "[t]here is no adequate remedy at law to compel Empire to participate in the appraisal process" [R. 451 at ¶ 37]. That is, no remedy but specific performance is adequate *where specific performance is sought*. But the remedy at law that must be shown inadequate is *money damages*. These exist, as discussed above.[33] And Positano seeks them even under this count [R. 452 (praying for "any damages")].

Positano's allegation that a failure to appraise precludes it from repairing its property is insufficient. And meritless. Empire is not Positano's lender, but its insurer. *See Buckley Towers Condominium v. QBE Ins. Corp.*, 395 Fed. App'x 659, 662 (11th Cir. 2010) ("Although [the insured] may be unable to receive the full range

---

[33] *See Saba*, 159 Ohio St. at 248-249 (Hart, J., dissenting) (explaining common law refusal to specifically enforce appraisal); *Hepburn et al.*, 5 Cranch at 279 (specific performance a departure from common law); *Specific Performance of Contracts Containing A Provision to Arbitrate*, 31 Y.L.J. 670, 670-671 (1922) ("Equity will usually not grant specific performance of contracts for valuation or arbitration, even though the legal remedy is inadequate . . . . But exceptions to this rule are recognized.") (citing FRY, SPECIFIC PERFORMANCE (4th ed. 1903) sec. 356; 5 POMEROY, EQUITY JURISPRUDENCE (4th ed. 1919) sec. 2180).

of benefits of their contract without an advance payment . . . that cost and inconvenience may not relieve [it] of repairing the building prior to claiming RCV damages.").

Identical allegations are routinely deemed insufficient to specifically enforce appraisal. *See, e.g., Parkway Baptist Church, Inc. v. Guideone Elite Ins. Co.*, No. 10-23965-CIV, 2011 WL 13099891, at *3 (S.D. Fla. Sept. 21, 2011) ("[I]t is unclear that Plaintiff can demonstrate there is no adequate remedy at law").[34] Other federal courts agree. *See, e.g., Battles, Inc.*, 2020 WL 6365513, at *4-*5 (same). The court and the Magistrate failed to consider *Parkway Baptist Church* or other cases.

Second, even if Positano sufficiently pleaded such relief, its motion "proved" nothing, and the court did not properly exercise discretion in granting relief. Federal procedure requires satisfaction of Rule 65, the exercise of discretion in weighing factors, and the tailoring of this remedy. *Cf.* Sturges, *supra* at 3 n.6 (recognizing courts must weigh injunctive factors and exercise discretion in compelling appraisal).[35] Any conflict between Florida law and Rule 65 is resolved in favor of

---

[34] *See also La Gorce Palace Condo. Ass'n, Inc.*, 733 F.Supp.2d at 1334 (same); *Sardinas v. Miami Veterinary Specialists, P.A.*, No. 1:20-cv-22987, 2020 WL 7241364, at *10 (S.D. Fla. Dec. 8, 2020) (same in different context); *Vallina v. Mansiana Ocean Residences, LLC*, 2010 WL 11553422, at *8 (S.D. Fla. Oct. 12, 2010) (same).

[35] *See also* Amy Schmitz, *Refreshing Contractual Analysis of ADR Agreements by Curing Bipolar Avoidance of Modern Common Law*, 9 HARV. NEGOT. L. REV. 1, 2, 4 n.22 (2004) (courts should not automatically compel specific performance of extra-

the latter. *See Blue-Grace Logistics LLC v. Fahey*, 340 F.R.D. 460, 466 (M.D. Fla. 2022). The fact that Florida courts may do something else does not justify importing that practice. *Cf., e.g., MaxLite, Inc. v. ATG Electronics, Inc.*, No. 15-1116, 2019 WL 3283077, at *3 (D. N.J. July 22, 2019) (refusing to enact "parallel procedure" tracking state "summary action" practice and instead evaluating injunction claim to compel payment through Rule 56).

Moreover, motions for specific performance require "testimonial and documentary evidence, including expert testimony of the specialized nature of the contract subject matter that damages would not be a just and reasonable substitution for its loss." 5 BUS. & COM. LITIG. FED. CTS. § 49:79 (4th ed.2020). Courts must find "[t]hat the comparative benefit and harm to the parties if specific performance is granted favors the party bringing the action." *Id.*

Here, Positano's motion met no such burden. It traveled neither under Rule 65 nor Florida law, both requiring "clear proof." *Compare Castigliano*, 911 So. 2d at 149, *with Tipton v. Woodbury*, 616 F.2d 170, 178 (5th Cir. 1980). Nor did the court treat the motion as one seeking Rule 65 relief. *Cf., e.g., Gray Ins. Co. v. Fla.*

---

judicial resolution agreements without balancing equitable factors and exercising discretion); *Georgia Advocacy Office v. Jackson*, 4 F.4th 1200, 1208 (11th Cir. 2021) (Rule 65 allows for tailoring of injunction); Samuel Bray, *The System of Equitable Remedies*, 63 UCLA L. REV. 530, 557 (2016) (noting that under Rule 65 "court is not limited to saying merely 'perform the contract', and it may impose further conditions . . . as needed").

*Paving & Trucking, Inc.*, 2014 WL 12776172, at *2 (S.D. Fla. Feb. 10, 2014) (treating motion as Rule 65 one because "a stand-alone 'motion for specific performance' is not provided for").

## II. Compelling Appraisal Absent Summary Judgment that Empire Breached the Provision Constituted a Grant of Unpled Relief Redressing an Un-adjudicated Wrong

The court erred in concluding that did "not" need to "treat [Positano's] motion to compel appraisal as one for summary judgment" [R. 780]. In the absence of an adjudicated breach, Empire should not have been forced to perform.

First, "[s]pecific performance . . . is a remedy for breach." *Ostuw*, 2020 WL 6305105, at *3. This entails "a cause of action which requires proof the contract was breached.'" *Macom Technology Solutions Holdings, Inc. v. Ifineon Technologies AG*, 881 F.3d 1323, 1332 (Fed. Cir. 2018) (citation omitted). *Cf. also Anoushfar*, 2021 WL 4848073, at *3, *7 (specific performance claim logically depended on breach of contract). It requires "proof of the contract . . . and of its breach." *Tipton*, 616 F.2d at 178. Unsurprisingly, appraisal is often sought through summary judgment. *See, e.g., Jacobs*, 236 F.3d at 1285 (reviewing summary judgment order

compelling appraisal).[36] Positano would have to defeat Empire's defenses. *See Stillman v. Travelers Ins. Co.*, 88 F.3d 911, 914 (11th Cir. 1996).[37] It failed to do so.

Second, "[a]lthough" Positano's motion "was styled as a motion to compel [appraisal] . . . it is essentially a motion for summary judgment." *J.W. Mariner Corp. v. Zurich American Ins. Co.*, No. 5:20-cv-143, 2021 WL 4958099, at *1 n.1 (N.D. Fla. July 7, 2021). *See also Great Lakes Ins. SE v. Concourse Plaza, A Condo. Ass'n, Inc.*, No. 21-cv-21873, 2022 WL 1681883, at *3 (S.D. Fla. May 26, 2022) (treating motion to compel appraisal as one for summary judgment, since it "will dispose of" pleaded entitlement to appraisal).[38] Federal courts elsewhere agree. *See, e.g., McCoy*, 189 F.Supp.3d at 900 (motion to compel appraisal "seek[s] partial summary

---

[36] *See also Pernas v. Scottsdale Ins. Co.*, No. 1:15-cv-21506, 2016 WL 471949, at *2 (S.D. Fla. Feb. 8, 2016); *Cypress Chase Condo. Ass'n A v. QBE Ins. Corp.*, No. 10-61987, 2013 WL 1191413, at *2-*3 (S.D. Fla. Mar. 22, 2013); *People's Trust Ins. Co. v. Slavin*, No. 4D21-3025, 2022 WL 1021043, at *1 (Fla. 4th DCA April 6, 2022).

[37] *Cf., e.g., Allegro at Boynton Beach, L.L.C. v. Pearson*, 287 So. 3d 592, 602 (Fla. 4th DCA 2019) (Warner, J., dissenting) (same).

[38] See also *Indian Harbor Insurance Company v. International Studio Apartments, Inc.*, No. 09-60671-CIV-ALTONAGA/Brown, 2009 WL 10668754, at *3 (S.D. Fla. Sept. 22, 2009) (treating motion to compel appraisal as one for summary judgment); *Palmer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, No. 13-80741, 2014 WL 12461372, at *5 (S.D. Fla. Nov. 7, 2014) ("Plaintiff's Motion to Compel . . . Appraisal . . . is essentially [its] own motion for summary judgment on this issue.").

judgment on . . . claim that [insurer] has breached the Policy by refusing to participate in the appraisal process").[39]

Third, the lower court's sole reason to the contrary is unpersuasive [R. 780 (citing *Waterford Condo. Ass'n of Collier Cty., Inc.,* 2019 WL 3852731, at *2)]. *Waterford* is neither analogous nor persuasive.[40] There, the court acknowledged that, where "[o]ne of the counts . . . [is] a demand for appraisal," courts have "treated a motion to compel appraisal as a request for summary judgment on that claim." 2019 WL 3852731, at *2 (citing *Int'l Studio Apartments, Inc.*, 2009 WL 10668574, at *3). Here, Positano's complaint sought relief compelling appraisal [R. 449-455 (¶¶25-44, 61(g))]. The rationale of *Int'l Studio Apartments* applied.

Regardless, *Waterford* incorrectly reasoned that what determines if summary judgment is necessary to compel appraisal is whether appraisal will decide if the amount is owed. 2019 WL 3852731, at *2. But what determines whether summary

---

[39] *See also St. Panteleimon Russian Orthodox Church*, 2013 WL 6190400, at *3 (motion seeking appraisal functionally summary judgment motion seeking specific performance); *Battles, Inc.,* 2020 WL 6365513, at *4-*5 (court "declin[ing] to exercise its power [to grant a motion to compel appraisal] without a motion for summary judgment or an adjudication on the merits"); *Mapleton Processing, Inc.*, 2013 WL 3467190, at *24 (same); *Battles, Inc.*, 2020 WL 6365513, at *5 (same).

[40] Empire has appealed many of those cases recently rejecting its argument. *See, e.g., Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-136, 2022 WL 780950, at *2 (M.D. Fla. Mar. 15, 2022); *Positano Place at Naples III Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-183, 2022 WL 714810, at *2 (M.D. Fla. Mar. 10, 2022).

judgment is required is whether the movant is seeking an adjudication—partial or not—of a claim, defense, or affirmative relief that is a component of either. Fed. R. Civ. P. 56(a). If the amount of loss, once calculated by appraisers, is appropriate for summary judgment,[41] why is entitlement to compelling that calculation not also appropriate? There should be no procedural carve-out for insurance cases involving appraisal.

### III. The District Court Erroneously Compelled Appraisal of Buildings for Which Coverage Was Denied

The lower court erred in compelling appraisal of all buildings [R. 781]. Neither reason advanced supported its conclusion.

First, appraisal of all buildings in a multi-building property without regard to the insurer's denial of coverage to each building is inappropriate. Where, as here, the Policy schedules several buildings, "the amount recoverable for a loss affecting one . . . must be determined independently of any loss affecting the other" for purposes of appraisal. *Pernas*, 2016 WL 471949, at *3 (denying appraisal of building for which insurer denied coverage). *See also Florida Ins. Guar. Ass'n v. B.T. of Sunrise Condo. Ass'n, Inc.*, 46 So. 3d 1039 (Fla. 4th DCA 2010) ("[E]ach separately scheduled building is covered by a separate contract of insurance with its own recoverable amount[.]").

---

[41] *Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d at 1230.

Here, Empire wholly denied coverage for two of the buildings because they suffered no damage [R. 674 (¶11), 692]. Thus, they were not appraisable. *See Pernas*, 2016 WL 471949, at *3 ("[E]ven though they are insured under the same policy, each property is its own entity, subject to potentially unique coverage issues," such that "because [the insurer] completely denied coverage for the losses to the 211 building, appraisal of those losses is not available."); *Johnson*, 828 So. 2d at 1022 ("[C]ausation is a coverage question for the court when an insurer wholly denies that there is a covered loss[.]"). Nationwide, it "is generally sacrosanct that the values to be appraised are as to each item of loss claimed," WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL at 69, not a generalized "claim" or "loss." Positano never addressed the argument before the Magistrate [R. 725].

Second, the court's two reasons for concluding the opposite are unpersuasive. For example, it incorrectly analogized this case to *Merrick Preserve Condo. Ass'n, Inc. v. Cypress Prop. & Cas. Ins. Co.*, 315 So. 3d 45, 50 (Fla. 4th DCA 2021), relying on the Magistrate's report [R. 781]. That analysis was equally incorrect [R. 726-28]. He reasoned that the two undamaged buildings were appraisable because, to avoid appraisal, Empire needed to wholly deny coverage for Positano's *entire* claim, not individual buildings [R. 726].

*Merrick* is distinguishable because, as the briefs show, there, the insurer agreed that there existed *some* damage—albeit under the deductible—to the relevant

building. *Reply Brief*, 2020 WL 8611204, at 2 (Fla. 4th DCA Nov. 6, 2020). Here, Empire's position always denied coverage for the two buildings for lack of hurricane damage: a coverage—not an amount of loss—dispute.

*Merrick* is also unpersuasive because it relied on distinguishable precedent. 315 So. 3d at 50 (citing to *Kendall Lakes Townhomes Developers, Inc. v. Agricultural Excess & Surplus Lines Insurance Co.*, 916 So. 2d 12 (Fla. 3d DCA 2005), *Underwriters at Lloyd's, London v. Sorgenfrei*, 278 So. 3d 930 (Fla. 5th DCA 2019), and *People's Trust Ins. Co. v. Tracey*, 251 So. 3d 931 (Fla. 4th DCA 2018)). *Tracey* and *Sorgenfrei* are homeowner cases involving *one* building. *See Tracey*, 278 So. 3d at 932; *Sorgenfrei*, 278 So. 3d at 930. Thus, the insurers' coverage denials there concerned only portions of the single-building property involved. And unlike here, in *Kendall Lakes*, "the insurance carrier *agree[d]* that there is a covered loss, but disagree[d] as to the amount of loss." 916 So. 2d at 16 (emphasis added).

The Magistrate did not successfully distinguish *Pernas* [R. 726-27]. He reasoned that *Pernas* was different because it involved an insurer's assertion of unsatisfied post-loss duties, and, here, Empire "has not alleged" such violations. Yet, Empire *did* allege that Positano violated post-loss duties [458-59]. Critically, *Pernas'* rationale on this issue did not hinge on post-loss duty violations.

*Pernas* reasoned that "the two properties are effectively covered by separate insurance contracts, meaning that the amount recoverable for a loss affecting one

property must be determined independently of any loss affecting the other," and "[a]n independent coverage determination for each property is thus required." 2016 WL 471949, at *3. The court agreed with the insurer's argument that building 221, undamaged, should not be appraised along with building 211. However, the court noted that it was "unable to decide whether the losses to the 211 building are covered," since critical coverage issues remained, including, but not exclusively, whether a covered peril caused it or the insured failed to mitigate damage. *Id.* Building 211 was the building the insurer admitted as damaged. The court relied on outstanding post-loss duty issues only to deny the *insured's* motion for summary judgment, since coverage could not be shown as a matter of law for the admittedly damaged building. *Id.*

Alternatively, the lower court wrongly asserted that, even if Empire was correct, it retained discretion to compel appraisal of all buildings [R. 728, 781]. But it relied on no precedent. Importantly, the conclusion does not follow. Discretion over the *timing* or order of appraisal and *coverage* adjudication is unrelated to the requirements defining what is appraisable. The latter are controlled by the Policy.

IV.    **The District Court Refused Imparting Guidelines for Appraisal Based on the Erroneous Legal Conclusion that It Lacked Such Discretion**

A.    **The District Court Failed to Review the Issue De Novo**

Despite recognizing that it needed to review the Magistrate's report *de novo* [R. 777], the district court improperly analyzed its conclusions on this issue for clear error only [(R. 782-83)]. All issues required *de novo* review.

The court was "obligated to make a *de novo* review of . . . those factual findings and legal conclusions that are the subject of objections" in a ruling "compelling appraisal." *Calzadilla v. Scottsdale Ins. Co.,* No. 18-25424, 2019 WL 2245518, at *5 (S.D. Fla. April 10, 2019). The practice is nearby universal.[42] And for good reason. Such reports pass on a "matter dispositive of a claim or defense." Rule 72(b)(1). *See also* 28 U.S.C. §636(b)(1)(B); *J.P.F.D. Investment Corporation v.,* 769 Fed. App'x at 703 (same). Other federal courts agree. *See, e.g., State Farm*

---

[42] *See Baldwin Realty Group Inc. v. Scottsdale Ins. Co.*, No. 6:18-cv-785-Or1-41DCI, 2018 WL 5221228, at *1 (M.D. Fla. Oct. 22, 2018) (adopting magistrate's ruling on appraisal only "[a]fter a de novo review of the record"); *Castillo at Tiburon Condominium Ass'n, Inc. v. Empire Indemnity Ins. Co.,* No. 2:20-cv-468, 2021 WL 4438370, at *2 (M.D. Fla. Sept. 28, 2021) (same); *Coral Reef Metro, LLC v. Scottsdale Ins. Co.,* 2019 WL 700114, at *1 (M.D. Fla. Feb. 20, 2019) (same); *Waterford Condominium Ass'n of Collier County, Inc.,* 2019 WL 3852731, at *1 (same); *Michelle Condominium, Inc. v. Certain Underwriters at Lloyd's, London,* 2021 WL 4244899, at *1 (S.D. Fla. Sept. 17, 2021) (same); *SB Holdings I, LLC v. Indian Harbor Ins. Co.,* No. 6:19-cv-668-Or1-40DCI, 2020 WL 1674326, at *1 (M.D. Fla. Jan. 9, 2020) (same); *Metropolitan Casualty Ins. Co. v. SFR Services L.L.C.,* 2020 WL 4207375, at *1 (M.D. Fla. July 22, 2020) (same); *Bettor v. Esurance Property and Casualty Ins. Co.*, No.: 18-61860-CIV-MORENO, 2019 WL 3408900, at *1 (S.D. Fla. June 17, 2019) (same).

*Fire & Cas. Co. v. Harper*, No. 3:20-cv-00856, 2022 WL 989088, at \*2-\*3 (M.D. Tenn. Mar. 31, 2022) (reviewing appraisal order *de novo* because it required specific performance and policy interpretation). Here, the error affected the outcome.

### B.   The District Court Improperly Refused to Impart Appraisal Guidelines

The lower court improperly refused to consider any reasonable guidelines for the appraisal process except itemization of the award, incorrectly assuming it lacked the power to prescribe them [R. 782]. This fell short of the "great care" that "must be taken to assure that the power of a court to require . . . action does not result in unwarranted harm to the defendant," *Alabama v. U.S. Army Corps of Engineers,* 424 F.3d 1117, 1127 (11th Cir. 2005).

First, a district court judge is required to exercise discretion in tailoring the specific performance of appraisal. *Cf.* Sturges, *supra* at 3 n.6 (courts must weigh injunctive factors and exercise discretion in compelling appraisal).[43] Although the "court is not limited to saying merely 'perform the contract', and it may impose further conditions . . . as needed," Samuel Bray, *supra* at 557, that is just what the lower court did here.

---

[43] *See also* Amy Schmitz, *supra* at 4 n.22 (specific performance of extra-judicial resolution agreements requires balancing of factors and discretion); *Jackson*, 4 F.4th at 1208 (Rule 65 allows for tailoring).

Second, a district court may also impart reasonable instructions for appraisal to safeguard its efficiency and the parties' due process. "'[C]ertain implied powers must necessarily result to our Courts of justice.'" *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991) (citation omitted). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (citation omitted).

Relatedly, "the Due Process Clause requires certain *minimum procedures* 'to ensure that [a property interest] is not arbitrarily abrogated.'" *Smith v. Organization of Foster Families for Equality and Reform*, 431 U.S. 816, 859 (1977) (Stewart, J., concurring) (internal quotations and citation omitted) (emphasis added). "[T]hat minimum is any reasonable procedure . . . which fairly protects . . . from arbitrary action." *Burgess v. Miller*, 492 F.Supp. 1284, 1290 (N.D. Fla. 1980).

Governmental action mandating appraisal implicates due process. *See, e.g., Hardware Dealers' Mut. Fire Ins. Co. of Wis. v. Glidden Co.*, 284 U.S. 151, 158 (1931) (upholding constitutionality of statute mandating insurance appraisals only if "procedure it adopts satisfies the constitutional requirements of reasonable notice and opportunity to be heard"). Judicial enforcement is no different. Courts have long required appraisal to respect minimal due process despite its informality. *See, e.g., Providence Washington Ins. Co. v. Gulinson*, 215 P. 154, 155 (Col. 1923) (reversing appraisal award because "[a]rbitrators constitute a quasi court, and while no

formalities are necessary, yet some . . . duties and responsibilities are similar"), *approved by Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.*, 443 P.3d 47, 52 (Col. 2019).[44] The same is true of Florida. *See, e.g., Lewis*, 10 So. at 302 (noting appraisal award not binding if "irregularity, unfairness, or fraud" shown) (relying on *Burchell v. Marsh*, 58 U.S. 344, 349 (1854) (award valid only "[i]f [it] is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties")).

Federal courts continue to exercise inherent powers to safeguard efficiency and due process. *See, e.g., Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 129 F.Supp.3d 1150, 1155 (D. Colo. 2015) (imposing minimal guidelines under "inherent power 'to control and supervise its own proceedings'") (citing *United States v. Carrigan*, 804 F.2d 599, 603 (10th Cir. 1986)).[45] Reasonable instructions

---

[44] *See also St. Paul Fire & Marine Ins. Co. v. Walsenburg land & Development Co.*, 278 P. 602, 603 (Col. 1929) ("It is axiomatic that every man has a right to be heard before judgment; also that he may waive that right. We do not think this appraisal clause was such a waiver."); *Itasca Paper Co. v. Niagara Fire Ins. Co.*, 220 N.W. 425, 426-27 (Minn. 1928) ("The duties of the board of appraisal are in the nature of common-law arbitration."); *Hozlock v. Donegal Companies/Donegal Mut. Ins. Co.*, 745 A.2d 1261, 1263 (Pa. Super. Ct. 2000) (appraisal judicially reviewed like common law arbitration).

[45] *See also Villareal v. Owners Ins. Co.*, No. 16-cv-01862, 2016 WL 9735733, at *2 (D. Col. Dec. 1, 2016) (crafting appropriate guidelines for appraisal); *Am. Storage Centers v. Safeco Ins. Co. of Am.*, 651 F.Supp.2d 718, 720 (N.D. Ohio 2009) (referencing "instructions for the . . . appraisal process"); *CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.*, 110 F.Supp.2d 259, 275 (D. Del. 2000) (ordering issues to be addressed by appraisers); *Terra Indus., Inc. v. Commonwealth Ins. Co. of Am., 981*

"protect the integrity of the process[,]" "increase the likelihood of a valid appraisal award," and "allow the appraisal process to proceed in an orderly and efficient manner that conserves the Court's resources and minimizes the need for further involvement of the Court." *Id.* In *Summit Park*, the court imposed some of the guidelines requested by Empire below. *Id.* at 1156-58 [*cf.* R. 666-67]. Yet, the lower court refused to consider these authorities.

Third, lower court's authorities for refusing guidelines are unpersuasive. The reasonable instructions sought by Empire included: (1) access to information relied on by the appraisers; (2) empowering appraisers to request needed information; (3) no ex parte communications with the panel without notice; (4) a calculation of ACV that excludes matching and depreciates labor; and (5) the panel's reliance solely on documents showing amounts actually spent on completed repairs in ascertaining RCV, not estimates [R. 666-67].

Without elaboration, the court relied on district court rulings denying itemization because "no policy language requires" them [R. 782]. The Magistrate's reasoning was similar. He reasoned that, unless Empire could quote specific Policy provisions expressly providing for the requested due process instructions, entertaining and imposing them would necessarily amount to "rewriting" the Policy

---

F.Supp. 581, 607 (N.D. Iowa 1997) (parties may seek instructions if intractable disputes arose over appraisal process).

[R. 729-30]. In support, he relied on rulings from other members of the bench [R. 730 (citing *Coral Reef Metro, LLC v. Scottsdale Ins. Co*., No. 2:18-cv-460, 2019 WL 721286, at *3 (M.D. Fla. Jan. 30, 2019), and *Waterford*, 2019 WL 3852731, at *3)]. Yet, *Coral Reef* and *Waterford* are not binding. *Harris v. Equifax Information Services, LLC,* No. 8:20-cv-1770, 2020 WL 6545977, at *2 n.3 (M.D. Fla. Nov. 6, 2020) ("[F]ederal district judges . . . lack authority to render . . . decisions binding other judges, even members of the same court.").

Nor are *Coral Reef* and *Waterford* relevant: here, the Magistrate did recommend—and the lower court upheld—imparting itemization instructions based on the Policy "as a whole" [R. 731]. They also did not involve the exact due process guidelines, arguments, and authorities presented by Empire in this case. Critically, neither relied on binding or persuasive precedent for its result. *Coral Reef* relied exclusively on *Intervest Constr. Of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494 (Fla. 2014). *Coral Reef Metro, LLC*, 2019 WL 721286, at * 3. But *Intervest Constr.* did not involve an appraisal award or consider the question posed below. 133 So. 3d at 497.

Waterford's rationale against itemization, that it "will . . . rewrite the policy," *Waterford*, 2019 WL 3852731, at *3, cannot defeat Empire's due process argument. On the one hand, it is incorrect. *See Bonafonte v. Lexington Ins. Co.*, No. 08-cv-

21062-CIV, 2008 WL 2705437, *2 (S.D. Fla. July 9, 2008) (itemization instruction proper); *Olympus Ass'n, Inc.*, 34 So. 3d at 796 n.1 (approving of *Bonafonte*).

On the other hand, the same textual analysis supporting itemization supports Empire's instructions for calculating ACV and RCV, and safeguarding due process. The appraisal provision "leave[s] much to the imagination . . . with regard to . . . procedure." WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL at 69. But it implies just enough. Appraisal will be of "the loss," and appraisers "will state separately the value of the property and the amount of loss" [R. 609]. The payable value of lost or damaged property must be "in accordance with" the valuation provision [R.399]. That provision, in turn, separately outlines ACV, RCV, and other expenses as the kinds of value in the Policy [R. 399]. ACV is generally read as meaning replacement cost minus depreciation. *Sos v. State Farm Mutual Auto. Ins. Co.*, 396 F.Supp.3d 1074, 1079 (M.D. Fla. 2019).[46] The RCV provision replaces the valuation provision, requiring actual expenditures and repairs [R. 402]. Appraisers must also be "competent and impartial" [R. 609]. "[P]rocedures" that "help to ensure 'due process and fair notice' . . . are . . . supported by the policy language requiring

---

[46] *See also Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013) (same); *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1279 (11th Cir. 2015) (noting undefined ACV deducts depreciation value based on *Trinidad*). ACV excludes matching costs. *Vasquez v. Citizens Property Ins. Corp.,* 304 So. 3d 1280, 1283 (Fla. 3d DCA 2020).

the appraisers to be 'competent and impartial.'" *Summit Park Townhome Ass'n*, 129 F.Supp.3d at 1152.

Similarly, where, as in this case, the amount sought in RCV benefits has not been "actually spent" on completed repairs, Empire cannot owe it. *Metal Products Co., LLC v. Ohio Security Ins. Co.*, No. 21-11612, 2022 WL 104618, at *2 (11th Cir. Jan. 11, 2022) (citing *Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007)); *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 395 Fed. App'x 659, 665 (11th Cir. 2010). This renders appraisal of RCV "a purely speculative appraisal of damages as to which it may be contended no liability at all exists." *New Amsterdam Cas. Co. v. J.H. Blackshear, Inc.*, 156 So. 695, 696 (Fla. 1934).

Appraisal is a mechanism to liquidate an unspecified amount of loss in the Policy. *Id.* Here, there is nothing to liquidate in terms of RCV. Positano's claim is not even ripe under Article III. *See Executive Plaza, LLC v. Peerless Ins. Co.*, No. 09-1976, 2010 WL 11632677, at *3 (E.D. N.Y. Feb. 8, 2010) (dismissing RCV claim for lack of repairs or replacements completed and paid for); *Cresthaven-Ashley Master Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 19-80959-civ, 2022 WL 873998, at *4 (S.D. Fla. Mar. 24, 2022) (dismissing O&L claim); *Diamond Lake Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:19-cv-547, 2021 WL 6118076, at *3 (M.D. Fla. Dec. 27, 2021) (same). Consequently, it is not appraisable. *See Jossfolk v. United Property & Cas. Ins. Co.*, 110 So. 3d 110, 111 (Fla. 4th DCA 2013)

("[P]rior [appraisal] proceeding had not appraised Ordinance and Law coverage, nor could it because none had been incurred at the time of the appraisal.").[47]

In sum, despite its authority to impart itemization instructions, the court below refused to even consider the reasonableness of any of Empire's other requested guidelines, whether as a matter of tailoring specific performance, inherent powers, or due process. The court thought it lacked any such power and exercising it would rewrite the Policy. Respectfully, this was incorrect.

---

[47] The lower court will later disregard such calculation. *See Ford v. American Security Ins. Co.*, No. 1:19-cv-20223-JLK, 2019 WL 6609239, at *3 (S.D. Fla. Dec. 5, 2019) (reducing award by subtracting prior payments and granting summary judgment to insurer); *Allen v. Amica Mutual Ins. Co.*, No. 1:12-cv-49, 2013 WL 11927705, at *6 (N.D. Ga. Feb. 28, 2013) (RCV component of appraisal award not owed absent completed repairs).

## CONCLUSION

Empire respectfully asks this Court to reverse the Honorable District Court

Judge's appraisal order and remand for further proceedings.

BUTLER WEIHMULLER KATZ CRAIG
LLP


*s/Christian Lee Gonzalez-Rivera*
J. PABLO CÁCERES, ESQ.
Florida Bar No.: 131229
pcaceres@butler.legal
CHRISTIAN GONZÁLEZ-RIVERA, ESQ.
Florida Bar No. 1020707
cgonzalez-rivera@butler.lega1
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
*Counsel for Empire Indemnity Insurance*
*Company*

## CERTIFICATE OF COMPLIANCE

Appellants brief complies with the word and page limits of the Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding all parts of the document exempted by rule 32(f), this document contains 12,349 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word in size 14 font.


/s/ *Christian Lee Gonzalez-Rivera*
CHRISTIAN L. GONZALEZ-RIVERA

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served

on all counsel of record on June 15, 2022, via the CM/ECF system.


/s/ *Christian Lee Gonzalez-Rivera*
CHRISTIAN L. GONZALEZ-RIVERA