No. 22-11059-GG

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

POSITANO PLACE AT NAPLES I
CONDOMINIUM ASSOCIATION, INC.,

Plaintiff/Appellee,

v.

EMPIRE INDEMNITY INSURANCE COMPANY,

Defendant/Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO.: 2:21-cv-00178-SPC-MRM

BRIEF OF APPELLEE
POSITANO PLACE AT NAPLES I
CONDOMINIUM ASSOCIATION, INC.

MARK A. BOYLE, ESQ.
GREGORY L. EVANS, ESQ.
BOYLE, LEONARD & ANDERSON, P.A.
9111 West College Pointe Drive
Fort Myers, Florida 33919
Phone: (239) 337-1303
Facsimile: (239) 337-7674

*Counsel for Appellee, Positano Place At Naples I Condominium Association, Inc.*

Case No. 22-11059-GG
*Positano Place I v. Empire*

## <u>CERTIFICATE OF INTERESTED PERSONS AND</u>
## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to *Federal Rule of Appellate Procedure* 26.1 and the Eleventh

Circuit *Local Rules* 26-1 and 28-1, the undersigned certifies that the following

persons may have an interest in the outcome of this appeal:

1. Boyle, Leonard and Anderson, P.A. (Counsel for Appellee)

2. Boyle, Mark (Counsel for Appellee)

3. Butler, Weihmuller, Katz, Craig LLP (Counsel for Appellant)

4. Caceres, J. Pablo (Counsel for Appellant)

5. Chappell, Hon. Sheri Polster (United States District Court Judge)

6. Empire Indemnity Insurance Company (Appellant)

7. Evans, Gregory (Counsel for Appellee)

8. Gonzalez-Rivera, Christian Lee (Counsel for Appellant)

9. McCoy, Hon. Mac R. (United States District Court Magistrate Judge)

10. Positano Place at Naples I Condominium Association, Inc. (Appellee)

*Case No. 22-11059-GG*
*Positano Place I v. Empire*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to 11th Cir. R. 26.1, the Appellee, Positano Place at Naples I Condominium Association, Inc., avers that it is a Florida Not-For-Profit Corporation.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The Appellee, Positano Place at Naples I Condominium Association, Inc., respectfully requests that oral argument be held in this case; oral argument would afford the Court the opportunity to pose any questions it may have concerning the facts or the specifics of the Parties' respective positions. The Appellee believes that participation in oral argument will be beneficial, and that the decisional process will be significantly aided by this Court's grant of oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................C 1 OF 2

STATEMENT REGARDING ORAL ARGUMENT ...............................................I

TABLE OF CONTENTS.........................................................................II

TABLE OF CITATIONS .......................................................................V

STATEMENT OF JURISDICTION.............................................................1

STATEMENT OF THE ISSUES................................................................1

STATEMENT OF THE CASE AND FACTS ........................................................2

SUMMARY OF THE ARGUMENT ...................................................13

STANDARD OF REVIEW ......................................................................16

ARGUMENT .................................................................................16

I.  IN ACCORDANCE WITH FLORIDA LAW, THE DISTRICT COURT APPROPRIATELY EXERCISED ITS INHERENT AUTHORITY AND DISCRETION TO REFER THIS MATTER TO BINDING APPRAISAL PROCEEDINGS ............................................18

   A. APPRAISAL: A PREFERRED METHOD FOR RESOLVING "AMOUNT OF LOSS" DISPUTES……………………………………………………………...18

   B. APPRAISAL: AN APPROPRIATE AND MANDATORY PROCESS WHERE THE INSURED ACKNOWLEDGES COVERAGE, EITHER IN WHOLE OR IN PART…………..………………………………………………………..19

   C. THE APPRAISAL PANEL IS UNIQUELY QUALIFIED TO SET THE AMOUNT-OF-THE LOSS, RESOLVE QUESTIONS OF CAUSATION, AND DETERMINE THE SCOPE AND METHOD OF NECESSARY REPAIRS……………………………………..………………………21

   D. APPRAISAL: THE TRIAL COURT'S INHERENT AUTHORITY AND DISCRETION OVER THE RELATIVE TIMING AND ORDER OF COMPELLING

APPRAISAL AND RESOLVING COVERAGE QUESTIONS………..…………………………………………………21

E. APPRAISAL: SEPARATE AND APART FROM THE UNILATERAL APPRAISAL PROVISION, THE COURT IS NOT REQUIRED TO IMPOSE ADDITIONAL GUIDELINES UPON THE PARTIES IN JUDICIALLY-COMPELLED APPRAISAL PROCEEDINGS………..…………………………………………………23

F. THE DISTRICT COURT APPROPRIATELY EXERCISED ITS INHERENT AUTHORITY AND DISCRETION IN REFERRING THE PARTIES TO APPRAISAL, AND THE APPRAISAL ORDER WAS IN ACCORDANCE WITH FLORIDA LAW……………………………………..……………..25

G. EMPIRE'S CHALLENGES TO THE DISTRICT COURT'S APPRAISAL ORDER………..…………………………………………………..28

II. POSITANO IS NOT REQUIRED TO PLEAD AND PROVE ITS ENTITLEMENT TO SPECIFIC PERFORMANCE AS A PREREQUISITE TO JUDICIALLY-COMPELLED APPRAISAL.....................................................................................29

III. POSITANO WAS NOT REQUIRED TO ALLEGE AND PROVE EMPIRE'S BREACH OF THE APPRAISAL CLAUSE THROUGH SUMMARY JUDGMENT AS A PREREQUISITE TO JUDICIALLY-COMPELLED APPRAISAL .......................................................33

IV. THE DISTRICT COURT APPROPRIATELY REFERRED THE PARTIES TO APPRAISAL FOR EACH OF THE SCHEDULED BUILDINGS ON THE POLICY ............................35

A. THE DISTRICT COURT'S ORDER COMPELLING AN APPRAISAL ON EACH OF THE POLICY'S SCHEDULED BUILDINGS IS IN ACCORD WITH FLORIDA LAW……………….…………………………………………………37

B. IN COMPELLING APPRAISAL, THE DISTRICT COURT APPROPRIATELY EXERCISED ITS INHERENT DISCRETION OVER THE RELATIVE TIMING OF APPRAISAL AND COVERAGE DETERMINATIONS………………………44

V. IN EXERCISING ITS INHERENT AUTHORITY TO COMPEL APPRAISAL ON THE AMOUNT-OF-LOSS QUESTION, THE DISTRICT COURT WAS NOT REQUIRED TO IMPOSE PROSPECTIVE INSTRUCTIONS ON THE APPRAISAL PANEL....................45

A. THE DISTRICT COURT'S REFUSAL TO REWRITE THE POLICY'S APPRAISAL PROVISION WAS CORRECT…………………………………………...46

B. EMPIRE'S REQUESTED INSTRUCTIONS CLEARLY CONTRADICT THE WELL-ESTABLISHED PRECEDENT GOVERNING THE FUNCATION AND

PURPOSE OF THE APPRAISAL PANEL'S RESOLUTION OF THE AMOUNT-OF-LOSS QUESTION…………………………………………………………47

C. EMPIRE'S REQUESTED INSTRUCTIONS CLEARLY FRUSTRATE THE ENTIRE PURPOSE FOR THE APPRAISAL PROCESS UNDER FLORIDA LAW………49

CONCLUSION ...................................................................................................50

CERTIFICATE OF COMPLIANCE ......................................................................51

CERTIFICATE OF SERVICE ..............................................................................52

# <u>TABLE OF CITATIONS</u>

<u>**Cases**</u>

*Allstate Ins. Co. v. Martinez,*

   790 So.2d 1151 (Fla. 3d DCA 2001)....................................................22

*Allstate Ins. Co. v. Suarez,*

   786 So.2d 645 (Fla. 3d DCA 2001).....................................................21

*American Capital Assurance Corporation v. Cayman I at Tarpon Bay*

   *Condominium Association, Inc.,*

   313 So.3d 847 (Fla. 2d DCA 2021)............................................. 23, 28

*American Capital Assurance Corporation v. Leeward Bay at Tarpon Bay*

   *Condominium Association, Inc.,*

   306 So.3d 1238 (Fla. 2d DCA 2020)........................................... 23, 26

*American Capital Assurance Corporation v. Palmetto Dunes at Pelican Sound*

   *Condominium Association, Inc.,*

   313 So.3d 897 (Fla. 2d DCA 2021)............................................. 23, 27

*American Coastal Insurance Company v. San Marco Villas Condominium*

   *Association, Inc.,*

   2021 WL 1895930 (Fla. 2d DCA 2021)..............................................23

*American Coastal Insurance Company v. South Seas East Condominium*

   *Apartments of Marco Island, Inc.*,

   328 So.3d 1160 (Fla. 2d DCA 2021) ....................................................23

*Anderson v. City of Bessemer City, N.C.*,

   470 U.S.564 (1985) ..............................................................................16

*Baldwin Realty Grp. Inc. v. Scottsdale Ins. Co.*,

   2018 WL 4381206 (M.D. Fla. Sept. 6, 2018) .......................................31

*Breakwater Commons Association, Inc. v. Empire Indemnity Ins. Co.*,

   2021 WL 1214888 .......................................................................... 25, 31

*Castillo at Tiburon Condominium Association, Inc.*,

   2021 WL 4438370 (M.D. Fla. Sept. 28, 2021) ....................................20

*Citizens Prop. Ins. Corp. v. Casar*,

   104 So. 3d 384 (Fla. 3d DCA 2013) ....................................................17

*Citizens Prop. Ins. v. Admiralty House, Inc.*,

   66 So. 3d 342 (Fla. Dist. Ct. App. 2011) .............................................25

*Citizens Prop. Ins. v. Galeria Villas Condo. Ass'n*,

   48 So.3d 188 (Fla. Dist. Ct. App. 2010) ..............................................25

*Citizens Property Ins. Corp. v. Mango Hill #6*,

   117 So. 3d 1226 (Fla. 3d DCA 2013) .............................................. 21, 22

*Citizens Property Insurance Corp. v. River Manor Condominium Association, Inc.*,

    125 So. 3d 846 (Fla. 4th DCA 2013)....................................................................21

*Citrus Contracting LLC v. Philadelphia Indem. Ins. Co.*,

    2019 WL 5191417 (M.D. Fla. Sept. 30, 2019)....................................................32

*CMR Construction and Roofing, LLC v. Empire Indem.,*

    *Corp.,* 843 F. App'x 189 (11th Cir. 2021) ..................................................... 30, 35

*Concord At The Vineyard Condominium Association, Inc. v. Empire Indemnity*

    *Insurance Co*.,

    2022 WL 4125041 ............................................................... 24, 28, 31, 36

*Coral Reef Metro, LLC v. Scottsdale Ins. Co*.,

    2019 WL 721286 (M.D. Fla. Jan. 30, 2019) ........................................................24

*Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    2022 WL 962743 (M.D. Fla. Jan. 31, 2022) ........................................................18

*Diamond Lake Condominium Association, Inc. v. Empire Indemnity Insurance Co*.,

    2020 WL 9160865 (M. D. Fla. Sept. 30, 2020)............................................. 28, 29

*First Floridian Auto & Home Ins. Co. v. Myrick,*

    969 So.2d 1121 (Fla. 2d DCA 2007)....................................................................19

*First Protective Ins. Co. v. Colucciello,*

    276 So. 3d 456 (Fla. 5th DCA 2019)....................................................................42

*First Protective Insurance Co. v. Hess,*

    81 So.3d 482 (Fla. 1st DCA 2012) .........................................................................19

*Fla. Ins. Guar. Ass'n v. Castilla*,

    18 So. 3d 703 (Fla. 4th DCA 2009).........................................................................33

*Fla. Ins. Guar. Ass'n, Inc. v. Olympus Ass'n, Inc.,*

    34 So.3d 791 (Fla. 4th DCA 2010)......................................................... 19, 49, 50

*Florida Insurance Guaranty Association v. B.T. of Sunrise Condominium*

    *Association, Inc.*,

    46 So.3d 1039 (Fla. 4th DCA 2010)....................................................... 43, 44, 45

*Gonzalez v. State Farm Fire And Cas. Co*.,

    805 So.2d 814 (Fla. 3d DCA) ................................................................. 37, 38, 40

*Hanover v. Lewis,*

    28 Fla. 209, 10 So. 297 (1891) ...............................................................................22

*Hill v. State Farm Fla. Ins. Co.*,

    35 So. 3d 956 (Fla. 2d DCA 2010).........................................................................19

*Horn v. Liberty Ins. Underwriters, Inc*.,

    998 F. 3d 1289 (11th Cir. 2021) .............................................................................46

*Intervest Construction of Jax., Inc. v. General Fidelity Ins. Co*.,

    133 So. 3d 494 (Fla. 2014) ..................................................................... 46, 47

*Island Shores Condominium Association, Inc. v. Great American Insurance Co. of*

    *New York*,

    2015 WL 12780951 ........................................................................22

*J.P.F.D. Inv. Corp. v. United Specialty Ins. Co.*,

    2017 WL 4685254 (M.D. Fla. Sept. 29, 2017).....................................32

*Johnson v. Nationwide Mut. Ins. Co*.,

    828 So.2d 1021 (Fla. 2002) ...................................................................21

*Kendall Lakes Townhomes Developers, Inc. v. Agricultural Excess and Surplus*

    *Lines Ins. Co*.,

    916 So.2d 12 (Fla. 3d DCA 2005).........................................................21

*Kungys v. U.S.*,

    485 U.S. 759 (1988)...............................................................................33

*Levi Holding, LLC v. Scottsdale Ins. Co.*,

    2018 WL 3575082 (M.D. Fla. July 25, 2018) .......................................28

*Liberty Mutual Fire Ins. Co. v. Hernandez,*

    735 So.2d 587 (Fla. 3d DCA 1999).......................................................21

*LoConte v. Dugger,*

    847 F.2d 745 (11th Cir. 1988) ...............................................................16

ix

*Marbella At Spanish Wells 1 Condominium Association, Inc. v. Empire Indemnity Ins. Co.*,

2022 WL 1302328 ...............................................24

*McGowan* v. *First Acceptance Ins. Co., Inc.,*

411 F. Supp. 3d 1293 (M.D. Fla. 2019)...............................20

*McPhillips v. Scottsdale Ins. Co.,*

2018 WL 3805865 (M.D. Fla. Aug. 10, 2018).....................28

*Merrick Pres. Condo. Ass'n, Inc. v. Cypress Prop. & Cas. Ins. Co.*,

315 So. 3d 45 (Fla. 4th DCA) ..............................10

*MKL Enterprises LLC v. American Traditions Insurance Company*,

265 So. 3d 730 (Fla. 1st DCA 2019) ....................... 19, 42, 45

*New Amsterdam Cas. Co. v. J.H. Blackshear, Inc.*,

116 Fla. 289, 156 So. 695 (1934) .........................19

*Paradise Plaza Condo. Ass'n v. Reinsurance Corp. of N.Y.*,

685 So. 2d 937 (Fla. 3d DCA 1996)......................... 19, 23

*People's Trust Ins. Co. v. Fernandez*,

317 So. 3d 207 (Fla. 3d DCA 2021)......................... 20, 50

*People's Trust Ins. Co. v. Garcia*,

263 So.3d 231 (Fla. 3d DCA January 23, 2019) .......................... 21, 42

*People's Trust Ins. Co. v. Nowroozpour*,

    277 So. 3d 135 (Fla. 4th DCA 2019) ............................................................. 30, 31

*People's Trust Ins. Co. v. Valentin*,

    305 So. 3d 324 (Fla. 3d DCA 2020) ....................................................... 30

*People's Trust Ins. Co.v. Tracey*,

    251 So.2d  (Fla. 4th DCA 2018) ........................................................... 21

*Pernas v. Scottsdale*,

    2016 WL 471949 (S.D. Fla. Feb. 8, 2016) ................................................. 42, 43

*Preferred Ins. Co. v. Richard Parks Trucking Co.,*

    158 So.2d 817 (Fla. 2d DCA 1963) ............................................................. 21, 22

*Preferred Mut. Ins. Co. v. Martinez*,

    643 So. 2d 1101 (Fla. 3d DCA 1994) ....................................................... 20

*State Farm Fire & Cas. Co. v. Middleton,*

    648 So.2d 1200 (Fla. 3d DCA 1995) ....................................................... 19

*State Farm Florida Ins. Co. v. Cardelles*,

    159 So.3d 239 (Fla. 3d DCA 2015) ......................................................... 23

*State Farm Florida Ins. Co. v. Sheppard*,

    268 So. 3d 1006 (Fla. 1st DCA 2019) ..................................................... 42

*Sunshine State Ins. v. Rawlins*,

    34 So. 3d 753 (Fla. 3d DCA 2010) .......................................................... 23

*Three Palms Pointe, Inc. v. State Farm Fire and Cas. Co.*,

  250 F.Supp.2d 1357 (M.D. Fla. 2003)...................................................33

*Triton Renovation, Inc. v. Empire Indemnity Insurance Company*,

  2021 WL 2291363, (M.D. Fla. June 4, 2021) ......................................20

*Underwriters at Lloyd's, London v. Sorgenfrei*,

  278 So. 3d 930 (Fla. 5th DCA 2019)....................................................41

*United Cmty. Ins. Co.* v. *Lewis,*

  642 So. 2d 59 (Fla. 3d DCA 1994).......................................................20

*United States v. United States Gypsum Co.*,

  333 U.S. 364 (1948)..............................................................................16

*Villagio at Estero Condominium Association, Inc. v. American Capital Assurance Corporation*,

  2021 WL 1432160 (Fla. 2d DCA 2021)...............................................23

*Waterford Condo. Ass'n of Collier Cnty., Inc. v. Empire Indem. Ins.*,

  2019 WL 4861196 (M.D. Fla. Oct. 2, 2019) ........................................23

*Webb Roofing & Const., LLC v. FedNat Ins. Co.*,

  320 So. 3d 803 (Fla. 2d DCA 2021)............................................... 33, 37

**<u>Statutes</u>**

28 U.S.C. 1292(a) .....................................................................................13

§§ 631.54 and 631.57 FLA.STAT .............................................................44

**Rules**

Fed. R. Civ. P. 56 ................................................................ 14, 34

Fed. R. Civ. P. 65 ...................................................... 1, 13, 29, 31

Fed. R. App. P. 26.1 ............................................................... 1

Fed. R. App. P. 32(a)(5) ......................................................... 51

Fed. R. App. P. 32(a)(6) ......................................................... 51

Fed. R. App. P. 32(a)(7)(B) ..................................................... 51

Fed. R. App. P. 32(f) ............................................................. 51

Fla. R. App. P. 9.130(a)(3)(B) .................................................. 32

Fla. R. App. P. 9.130(a)(3)(C)(iv) ............................................. 32

**Other Authorities**

*Understanding the Insurance Policy Appraisal Clause: A Four-Step Program*,

   37 U. Tol. L. Rev. 931 (Summer 2006) ................................. 17

## STATEMENT OF JURISDICTION

For the reasons cited in the *Appellee's Response to Jurisdictional Question* ("Jurisdictional Brief"), and which is incorporated herein by reference in its entirety, Positano Place At Naples I Condominium Association, Inc. ("Appellee", "Positano I", or "Association") respectfully submits that this Court lacks jurisdiction over this appeal.

## STATEMENT OF THE ISSUES

1. Does this Court have jurisdiction to review the District Court's order referring the Parties to appraisal on the amount-of-loss question?[1]

2. Did the District Court err by referring the Parties to appraisal in the same manner as Florida state courts have done for decades?

3. Must a District Court adjudicate the appropriateness of appraisal through FED. R. CIV. P. 65 [Injunctions] and/or 56 [Summary Judgment] when appraisal functions as a non-remedial and non-dispositive form of contractually-bargained-for alternative dispute resolution?

4. Did the District Court err in compelling appraisal of the Policy's five (5) scheduled Buildings?

---

[1] As stated *supra*, Positano I rests on its Jurisdictional Brief; for the reasons stated therein, Positano I respectfully maintains that this Court lacks jurisdiction over this appeal.

5. Did the District Court err in refusing to rewrite the Parties' contractually-bargained-for unilateral Appraisal Clause?

**STATEMENT OF THE FACTS AND CASE**[2]

With specific reference to the Record before this Court, the Appellee provides the following *Statement of the Facts and Case*:

> ### a. *The Loss And The Policy Affording Coverage For The Loss.*

The pending insurance contract dispute arises from Hurricane Irma on September 10, 2017 ("Loss", "Insurance Claim", or "Windstorm Event"), and, specifically, centers upon the Association's first-party claim for property insurance benefits under *Empire Indemnity Ins. Co. Policy No. ECL9490628-02* ("Policy"). As evidenced by its pleadings in this matter, Positano I has consistently maintained that the Windstorm Event caused severe damage to those buildings (120-unit complex) located at or in the environs of 12910 Positano Circle, Naples, FL 34105 ("Insured Premises"). *See generally* [*Second Amended Complaint*]; (Doc. 39) *[Plaintiff's Motion To Compel Appraisal And Stay Proceedings Pending Completion Of Appraisal And Incorporated Memorandum Of Law* ("Appraisal Motion")]; (Doc.

---

[2] In providing this Response, the Appellee necessarily cites to the Record generated in the instant District Court litigation styled Positano Place at Naples I condominium Association Inc., *Plaintiff, vs. Empire Indemnity insurance Co., Defendant*, Case No. 2:21-cv-00178-SPC-MRM (M.D. Fla. 2021) ["District Court Litigation"]. For ease of reference, the Appellee identifies the Parties' particular pleadings by name and/or designated document number ("Doc.___"), and with respect to each designated document, the Appellee will refer to a specific paragraph number ("¶___") or the CM/ECF pagination for pinpoint page citations contained therein.

41).

No later than March 16, 2018, the Association submitted the Loss to Empire Indemnity Insurance Corp. ("Empire" or "Insurer") in accordance with the terms and provisions of the Policy, with effective dates of coverage from January 26, 2017, to December 31, 2017. The Policy affords "all risk" commercial property insurance coverage for the 5 scheduled Buildings [Location Nos. 1-1 to 1-5 under the same insurance contract] at the Insured Premises (the collective "Building Limit" of which totals $10,053,670.00) on a "Replacement Cost" basis, which is subject to a 3% "Calendar Year Hurricane Deductible" (subject to a $25,000 Minimum Deductible per Calendar Year). The Policy also affords other various coverages, including, but not limited to, "Ordinance or Law" coverage. *See,* (Doc. 1-1).

The Policy, which was drafted, marketed and sold by Empire to the Association, also includes a unilateral appraisal provision ("Appraisal Clause"), whereby either party may insist that the amount-of-loss be resolved by an appraisal panel:

> **Mediation or Appraisal**
>
> If we and you:
> …
> B.     Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an

3

umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1.   Pay its chosen appraiser; and
2.   Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

…

*See generally*, Policy [Doc. 39, Ex. A.]

### b. *The Insurance Claim*

Empire's May 21, 2018, correspondence to the Insured's insurance consultant, George W. Keys, SPPA (Keys Claims Consultants, Inc. or "KCC") evidences Empire's receipt and acknowledgment of the Association's March 2018 Insurance Claim. (Doc. 47-1, pp. 9-13) [May 21, 2018 Letter]. Significantly, the Insurer's May 21, 2018 Letter further confirms Empire's decision to (i) assign *one claim number* [Claim No. 5630018365] for the adjustment of the Association's damages claimed for each of the 5 scheduled Buildings upon the Insured Premises [Building Nos. 12920, 12931, 13000, 13010, and 12930], and (ii) collectively address/evaluate the claimed damages for each of the 5 scheduled Buildings in its written correspondence with the Association's representatives.  The May 21, 2018, Letter further documents the Insurer's initial conclusion that each of the roofing systems for each of the "referenced loss locations" sustained "wind damage":

> Based on our initial investigation and review of the applicable policy forms, we have determined that the wind damage to the roofs were under the deductible at the referenced loss locations…Mr. Eyle [J.S. Held] did observe minimal wind damages to the roof…. While we inspected the roofs and noted the damages and conditions of the claimed roofs for this claim…In this case, the wind damages do not exceed the applicable deductibles.

See, (Doc. 47-1, pp. 880-883 [with omissions]).

On February 6, 2019 (and in separate written correspondence to KCC), Empire requested the Association's preparation and submission of a Sworn Statement and Proof of Loss ("POL") on a company-provided form. The February 6, 2019, Letter again referenced the single assigned Claim Number with the Loss Locations described as "1-1 through 1-5 12920, 12931, 13000, 13010, & 12930 Positano Circle, Naples, FL 34105". (*Id*., pp. 15-19). Significantly, Empire's representative (i) only provided one POL form for the Association's submission for the claimed damage to each of the 5 scheduled Buildings, and (ii) did not otherwise request that a separate POL be submitted for each of the scheduled Buildings. (*Id.*).

Empire's May 21, 2019, Letter to KCC (i) confirms its receipt of the Association's initial (and "partial") April 23, 2019, POL submission; (ii) documents Empire's treatment of the partial POL as part of its ongoing adjustment of the roof damage; and (iii) evidences Empire's objection to the Association's designation of KCC and any representative of KCC as the Insured's Appraiser in the adjustment/resolution of the Insurance Claim. (*Id.,* at 22). In acknowledging receipt

of the initial April 2019 POL, Empire representatives raised no issue or concern with respect to the Association's presentation of its claimed damages for the five (5) scheduled Buildings in a single POL. The May 21, 2019 Letter further advised of Empire's position (raised for the first time and more than one year after Positano's submission of the Insurance Claim) that two (2) out of the five (5) scheduled Buildings [12931 Violino Lane; 13000 Positano Circle], and "… did not incur any hurricane-related damage per our investigation…" and, "[t]herefore, we are denying coverage as a whole for any damage claim to these buildings". (*Id.,* at 22).

Empire's September 28, 2020, Letter to KCC confirms Empire's (i) "undisputed payments totaling $39,266.96 to the Insured in relation to the claim"; and (ii) receipt of the Association's updated September 27, 2019 POL submission in the amount of $2,140,561.04. (Doc. 47-1 at 27). In acknowledging receipt of the initial September 2019 POL, Empire representatives again raised no issue or concern with respect to the Association's presentation of its claimed damages for the 5 scheduled Buildings in a single POL. (*See id.* at 27-30).

### c. The Association's Pre-Suit Demand For Appraisal On The Disputed Amount-Of-Loss Question

The Insurer acknowledged coverage for the Loss; however, the Parties clearly disagreed over its value. *See generally*, (Doc. 60) [March 10, 2022, *Opinion And Order* ("Appraisal Order")]. While the Insurer agreed that the covered damages at the Insured Premises were at least $39,266.96 (and, in fact, tendered "undisputed

payments" for that amount), the Association assessed these covered damages at an amount that clearly exceeded the Insurer's payment, i.e., $2,140,561.04 [full cost of repair or replacement]/$1,838,950.94 [post-deductible "Amount Claimed"]. *See generally*, (Doc. 50, p. 6) [January 26, 2022, *Report and Recommendation* ("R&R")]. Given the Parties' disagreement over the amount-of-loss, and before the inception of the instant litigation, the Association demanded binding appraisal proceedings in accordance with the terms and provisions of the Policy's unilateral Appraisal Clause. *See*, (Doc. 1, ¶¶18-19, 29-30); (Doc. 41). Empire failed to meaningfully respond to Positano's appraisal demand. This failure forced Positano to sue Empire on January 15, 2021. *See*, (Doc.1, p. 6).

### d. *The District Court Litigation: The Operative Pleadings And The Relevant Rulings*

Positano's operative Complaint is a straightforward one: therein, the Association pursues claims for Specific Performance [Count I], Breach of Contract [Count II], and Declaratory Judgment [Count III]. The Complaint is replete with references to the sole reason it filed suit: Empire's steadfast refusal to participate in appraisal. *See*, (Doc. 39, ¶¶ 18-21; 25-44; 48-50; 55-60).  As a result of Empire's breach, Positano's Complaint seeks all available insurance benefits under the Policy, including its request for an appraisal of the amount-of-loss question in accordance with the Policy's appraisal clause. *See*, (Doc. 39, ¶¶ 1- 61).

On June 6, 2021, Empire filed its *Answer, Affirmative Defenses And Demand*

*For Jury Trial* ("Answer and Affirmative Defenses") *See*, (Doc. 40, pp.727-744). Therein, Empire raised nineteen (19) separate Affirmative Defenses, many of which involve Policy provisions that separate and apart from the Policy's Appraisal Clause and do not otherwise concern the Association's demand for appraisal on the amount-of-loss question. Rather, these coverage defenses include, but are not limited to, Empire's reliance upon the Policy's "Replacement Cost" condition, "Ordinance or Law" endorsement, "post-loss" conditions ["notice" and "cooperation" provisions], "settling cracking shrinking or expansion" exclusion, and "faulty, inadequate, or defective…design, specifications, workmanship, repair, etc." exclusion. (*Id.*) These coverage defenses have never been dismissed from this case, nor has the District Court issued any dispositive ruling upon said defenses.

On July 23, 2021 (a little over one month after Empire filed its Answer and Affirmative Defenses), Positano filed its Appraisal Motion; said motion was referred by the District Court to U. S. Magistrate Judge, the Honorable Mac. R. McCoy for disposition. (Doc. 41). Therein, Positano sought a stay of this case pending the resolution of the amount-of-loss question in binding appraisal proceedings in accordance with the Policy's Appraisal Clause. (Doc. 41).

On January 26, 2022, Magistrate Judge McCoy issued the R & R granting Positano's request for binding appraisal and stay. (Doc. 50). Applying Florida law, the Magistrate Judge concluded that the Record amply demonstrated Positano's

satisfaction of those conditions necessary to trigger the Policy's unilateral Appraisal Clause; that is, proof of (i) a covered loss under the Policy; (ii) Positano's compliance with the Policy's post-loss allegations; and (iii) the Parties' disagreement over the amount-of-loss. (*Id*., p. 905).

In recommending the District Court's referral of the Parties to appraisal, the Magistrate Judge rejected each of the substantive arguments raised by Empire in its opposition to Positano's Appraisal Motion. *See*, (Doc. 47, pp. 852-871) [*Defendant's Response In Opposition To Plaintiff's Motion To Compel Appraisal And For Stay*].

First, the Magistrate Judge dismissed Empire's suggestion that as a prerequisite to appraisal under the Policy, Positano was first required to plead and prove the elements of specific performance; rather, he concluded that in accordance with Florida precedent, the District Court had the inherent ability to compel appraisal absent allegations and proof of a party's entitlement to the "specific performance" remedy. (Doc. 50. pp. 916-922). Magistrate Judge McCoy also rejected Empire's contention that appraisal could not be compelled prior to a final determination as to whether Empire breached the Policy's Appraisal Clause and opined that in those instances when an insurer acknowledges that there is a covered loss, any dispute regarding the amount of such loss is appropriate for appraisal under Florida law. (*Id*., pp. 922-924).

In recommending the referral of the Parties to appraisal, the Magistrate Judge

also dismissed Empire's argument that because it "wholly denied" coverage for 2 out of the 5 scheduled Buildings on the Policy (referenced as the "Additional Buildings"), appraisal as to these Additional Buildings would be inappropriate. (*Id*., pp. 924-927). Citing to the Florida Forth District's decision in *Merrick Pres. Condo. Ass'n, Inc. v. Cypress Prop. & Cas. Ins. Co*., 315 So. 3d 45 (Fla. 4th DCA) and the Record, Magistrate Judge McCoy concluded that Empire "…has not "wholly denied" coverage and, therefore, appraisal is appropriate to determine the amount of loss as to each building, including the Additional Buildings". The Magistrate Judge further opined that given the Court's "discretion over the relative timing of appraisal and coverage determinations", requiring the appraisal as to each of the scheduled Buildings would likely "assist the Court when it later determines any remaining coverage issues". (*Id*., p. 930).

Magistrate Judge McCoy further recommended that the judicially-compelled appraisal should proceed in accordance with the Policy's Appraisal Clause as written; that is, the Court rejected Empire's request for the imposition of the following additional conditions upon the appraisal panel:

> (1) copy and notice of documents submitted by [Plaintiff] to the appraisal panel; (2) empowering the appraisers to seek and obtain from the parties all documentary evidence needed and with a deadline for submissions; (3) no ex parte communications between the parties and appraisal panel without copy to the other party; (4) a reasonable itemization of the award segregating the calculation of actual cash value from replacement cost, showing all deductions and

depreciation; (5) a calculation of the amount of loss that excludes matching and includes depreciation of labor; and (7)[sic] the panel's consideration only of invoices, receipts, and documents showing money actually spent on repairs, not estimated amounts, in calculating replacement cost.

*See*, (*Id*., pp. 927-928). Citing to well-established precedent, the Court refused to "impose guidelines or require specific processes during appraisal as that would amount to rewriting the parties' Policy to add conditions for the appraisal process that were not part of the parties' bargain". The Magistrate Judge noted that the Appraisal Clause "does not require that the Court (1) impose specific guidelines on the appraisal panel, (2) mandate a specific appraisal process, or (3) compel a specific form for the appraisal award". (*Id.*, 929-930 [citations omitted]).

The Magistrate Judge, however, found that based upon a construction of the Policy as a whole (and there being no objections from the Parties), it is "…appropriate to require the appraisal panel to issue an award that delineates between the specific coverages offered under the Policy for each unique building", noting that "any future coverage determinations relating to the Additional Buildings that [Empire] claims were not damaged…may be more efficiently implemented to the final determination if the appraisal panel issues an award taking this form". (*Id.*, 930-931 [citations omitted]).

Empire objected to the R&R, to which Positano provided its response. *See*,

(Doc.51); (Doc.57). On March 10, 2022, U.S. District Court Judge, the Honorable Judge Sheri Polster Chappell, issued the Appraisal Order, which overruled Empire's Objections and adopted the R & R in its entirety. *See*, (Doc. 60, p. 988). In issuing the Appraisal Order, Judge Chappell confirmed the District Court's *de novo* review of the issues raised. (*Id.,* p. 989).

In affirming Magistrate Judge McCoy's R & R, the District Court specifically addressed and rejected Empire's "specific performance" and "summary judgment" challenges to court-ordered appraisal in accordance with the Policy:

> The Court's source of authority to order the parties to participate in an alternative dispute process comes from its subject-matter jurisdiction over a contract dispute where the contract contains a provision where the parties contracted for the right to have amount-of-loss disputes decided informally by experienced appraisers. Further, because appraisal will not dispose of any claims or defenses, the Court does not treat the motion to compel appraisal as one for summary judgment…. Thus, Empire's objections that Plaintiff did not sufficiently plead or show entitlement to specific performance and that appraisal should not be compelled absent a summary judgment or trial, are overruled.

*See*, (*Id*., pp. 992-993).

The District Court further adopted the R & R's findings that court-ordered appraisal for each of the Policy's five (5) scheduled Buildings was appropriate in this case. Judge Chappell agreed with Magistrate Judge McCoy's finding that Empire did not "wholly deny" coverage for the Loss, and, further, opined that there was a genuine dispute over the cause of the damage (an issue appropriate for appraisal). *See*, (Doc. 60, p. 993 [citations omitted]). In addition, the District Court

specifically observed that the Record did *not* support Empire's position that it had, in fact, denied coverage for the Additional Buildings; rather, Empire's May 21, 2018 Letter evidenced its acknowledgment of coverage for each of the scheduled buildings' roofing systems. *See*, (*Id.*); (Doc. 60, pp. 993-994). The "wholly denied" question side, the District Court agreed with the Magistrate Judge's additional basis for requiring appraisal on each of the scheduled Buildings: [t]he Court has "discretion over the relative timing of appraisal and coverage determinations," and "requiring appraisal as to the buildings covered by the Policy will 'likely assist the Court when it later determines coverage.'" [3] (*Id.,* pp. 993 [citation omitted]).

Empire thereafter filed its *Notice of Appeal* of the Appraisal Order on March 18, 2022. *See,* (Doc. 61).

## SUMMARY OF THE ARGUMENT[4]

On appeal, Empire first argues that the district court erred by failing to require a showing of entitlement to injunctive relief under FED. R. CIV. P. 65. Not so. Appraisal, much like mediation, is not remedial. To this end, participation in the appraisal process does not remedy the damage caused by Hurricane Irma; rather,

---

[3] As discussed in Positano's Jurisdictional Brief, this portion of the Appraisal Order amply demonstrates that the District Court's referral of the Parties to appraisal proceedings was interlocutory in nature, and, thus, not a final appealable order in accordance with 28 U.S.C. 1292(a).

[4] In providing this Summary of the Argument, the Appellee incorporates herein by reference those points raised and addressed in its Jurisdictional Brief, and, specifically, its position that this Court lacks jurisdiction over this appeal.

Positano's remedy for Hurricane Irma damage are those benefits due under the Policy in the form of money damages. The Court's authority to order appraisal is grounded in its subject matter jurisdiction over Positano's breach of contract and/or declaratory judgment action counts in the operative Complaint. Once these causes of action are alleged, Florida law has *authorized* courts to order parties to participate in appraisal upon motion or petition *for decades*.

Indeed, and as the District Court has previously noted in the legion of cases referring parties to appraisal on the amount-of-loss question, a required showing of entitlement to injunctive relief would *eliminate the utility of appraisal provisions*. Such a rule would lead to increased procedural fencing and forum shopping in Florida courts, as parties that wished to avoid their contractual obligation to participate in appraisal would seek haven in the federal courts. Such requirement would also clog up district court dockets.

As a variation of its first argument, Empire further suggests that the District Court should have treated Positano's Appraisal Motion as one for summary judgment, and that in the absence of an adjudicated breach, Empire should not have been forced to perform. The District Court has consistently rejected this argument, finding that the appraisal process does not determine the existence (or lack thereof) of any disputed material fact, nor does it determine whether a party is entitled to judgment in its favor. Simply put, a FED. R. CIV. P. 56 summary

judgment motion is not a requisite vehicle to determine whether appraisal is appropriate.

Empire next argues that the District Court erred in compelling appraisal of the five (5) scheduled Buildings on the Policy, claiming that it "wholly denied" coverage for the Additional Buildings. Based upon its independent review of the Record, the District Court rejected Empire's allegations on this point, noting that during its adjustment of the Loss, Empire acknowledged covered wind damage to each of the Buildings' roof systems. In any event, and the Parties' factual dispute over the *extent* of the covered losses arising from the Loss aside, the District Court correctly found that the Record demonstrates Empire's acknowledgment of at least some covered windstorm damage at the Insured Premises. Thus, and because Empire had not "wholly denied" coverage *under the Policy* for the Loss, appraisal for the 5 scheduled Buildings is appropriate under Florida law. The District Court further noted that given its inherent discretion over the relative timing of appraisal and coverage determinations, requiring appraisal as to the scheduled Buildings will likely assist the Court when it later determines coverage.

Finally, Empire posits that the District Court "improperly refused to consider any reasonable guidelines for the appraisal process except itemization of the award, incorrectly assuming it lacked the power to prescribe them". The District Court's rejection of Empire's request for these additional guidelines was hardly

15

"improper"; rather, the District Court merely ordered that the Parties proceed to appraisal in accordance with the Policy's written Appraisal Clause – a provision that Empire itself drafted, marketed and sold to insurance consumers, including Positano. Citing to the cornerstone principles of Florida insurance contract law, the Court correctly refused to "impose guidelines or require specific processes during appraisal as that would amount to rewriting the parties' Policy to add conditions for the appraisal process that were not part of the parties' bargain".

## STANDARD OF REVIEW

This Court reviews the District Court's findings in the Appraisal Order, whether by its adoption of the U. S. Magistrate's R & R and/or *de novo* review of the Record, pursuant to the "clearly erroneous" standard of review on appeal. *See, LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988). A finding is clearly erroneous when this Court "'is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, this Court should not reverse "simply because it is convinced that it would have decided the case differently." *Id.*

## **ARGUMENT**

Empire acts as if the district court forced it to participate in a deeply unfair and burdensome appraisal process that eviscerates its due process rights. But the district court simply enforced the Policy Empire drafted in accordance with decades Florida precedent concerning appraisal.

Empire, like most Florida insurers do, inserted a unilateral appraisal provision into the Policy. *See* Johnny C. Parker, *Understanding the Insurance Policy Appraisal Clause: A Four-Step Program*, 37 U. Tol. L. Rev. 931, 931 (Summer 2006). Insurers, like Empire, use appraisal provisions to save time and money otherwise spent litigating. *See* Jonathan Wilkofsky, The Law and Procedure of Insurance Appraisal 2-3 (3d ed. 2015) (citation omitted). Florida courts have long favored the enforcement of appraisal provisions as doing so honors the bargained-for expectations of the parties and promotes judicial economy.

Empire was not obligated to include a unilateral appraisal provision in the Policy. Empire could have used a bilateral appraisal provision, which requires the consent of both parties to appraise a claim. *See, e.g.*, *Citizens Prop. Ins. Corp. v. Casar*, 104 So. 3d 384, 385-86 (Fla. 3d DCA 2013). Further still, Empire could have abstained from including the Appraisal Clause *at all* in the Policy.

Unhappy with its decision, Empire cites numerous secondary sources and cherry-picks portions of opinions to support its attempt to modify the the Appraisal

Clause. As a district court recently observed, "[Empire's] arguments request *sweeping changes to current Florida law*, but are mostly supported by citations to authority outside of Florida and the Eleventh Circuit. While the cited cases may hold some persuasive value, they should not be used to overturn *extensive Florida precedent*." *Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 20-cv-136, 2022 WL 962743, at *4 (M.D. Fla. Jan. 31, 2022), *report and recommendation adopted*, 2022 WL 780950 (M.D. Fla. Mar. 12, 2022), *appeal docketed*, No. 22-10894 (11th Cir. Mar. 22, 2022) (citation omitted) (emphasis added).

If Empire wants to alter how appraisal works, it can craft an appraisal provision that fits its desires. Alternatively, Empire can lobby the Florida legislature for a uniform appraisal procedure. This Court, however, is charged with determining whether the district court erred in applying the current Florida law. In applying Florida law, the district court did not err.

**I.    In accordance with Florida Law, The District Court Appropriately Exercised Its Inherent Authority And Discretion To Refer This Matter To Binding Appraisal Proceedings.**

The District Court's Appraisal Order is squarely supported by the well-established principles governing the construction and application of a unilateral appraisal provisions under Florida law.

**A. *Appraisal: a preferred method for resolving "amount of loss" disputes***

It is well-established that [c]ovenants in policies providing for appraisal are valid. *See generally*, *New Amsterdam Cas. Co. v. J.H. Blackshear, Inc.* 116 Fla. 289, 156 So. 695 (1934).   Moreover, there is an "overwhelming preference in Florida for the resolution of conflicts through any extra-judicial judicial means, especially arbitration [or appraisal] for which the parties have themselves contracted*". See, State Farm Fire & Cas. Co. v. Middleton,* 648 So.2d 1200 (Fla. 3d DCA 1995); *MKL Enterprises LLC v. American Traditions Insurance Company*, 265 So. 3d 730 (Fla. 1st DCA 2019) ("[g]enerally appraisal clauses are preferred, as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits. … Appraisals are appropriate where an insurance company admits that there is a covered loss, but there is a disagreement as to the amount of loss."); *First Protective Insurance Co. v. Hess,* 81 So.3d 482 (Fla. 1st DCA 2012);  *Fla. Ins. Guar. Ass'n, Inc. v. Olympus Ass'n, Inc.,* 34 So.3d 791, 794 (Fla. 4th DCA 2010); *First Floridian Auto & Home Ins. Co. v. Myrick,* 969 So.2d 1121, 1125 (Fla. 2d DCA 2007). "The appraisal process . . . is simply work done within the terms of the contract to resolve the claim." *Hill v. State Farm Fla. Ins. Co.*, 35 So. 3d 956, 961 (Fla. 2d DCA 2010). Appraisals conserve judicial resources which might otherwise be required to resolve difficult issues presented by property insurance claims through a "relatively swift and informal decision by the appraisers as to the amount of loss." *Paradise Plaza Condo. Ass'n v. Reinsurance Corp. of N.Y*., 685 So. 2d 937, 941

19

(Fla. 3d DCA 1996). *See also, Castillo at Tiburon Condominium Association, Inc.*, Case No. 2:20-CV-468-SPC-MRM, 2021 WL 4438370 (M.D. Fla. Sept. 28, 2021) (Court finds that compelling appraisal "not only upholds the terms of the policy but conserves the parties' and this Court's resources should appraisal resolve the scope of loss issue between the parties without further litigation", *citing, People's Trust Ins. Co. v. Fernandez*, 317 So. 3d 207, 211 (Fla. 3d DCA 2021)).

### B. Appraisal: An Appropriate And Mandatory Process Where The Insurer Acknowledges Coverage, Either In Whole Or In Part.

Florida law is clear: when an insurance policy, like the Empire Policy *sub judice*, contains a unilateral appraisal provision, "the right to appraisal is not permissive but is instead mandatory, so once a demand for appraisal is made, neither party has a right to deny that demand". *See generally*, *McGowan* v. *First Acceptance Ins. Co., Inc.,* 411 F. Supp. 3d 1293, 1296 (M.D. Fla. 2019) (*quoting, United Cmty. Ins. Co.* v. *Lewis,* 642 So. 2d 59, 60 (Fla. 3d DCA 1994). *See also, Preferred Mut. Ins. Co. v. Martinez*, 643 So. 2d 1101, 1103 (Fla. 3d DCA 1994) (reversing denial of motion to compel appraisal because such motions "should be granted" whenever the insurance policy includes an appraisal provision). "And so, legions of Florida cases regularly compel appraisal by interlocutory order whenever a party properly invokes the right." *Triton Renovation, Inc. v. Empire Indemnity Insurance Company*, No. 2:20-cv-432-JLB-NPM, 2021 WL 2291363, *4, (M.D. Fla. June 4, 2021).

The appraisal process can be properly invoked in instances where the insurer

acknowledges insurance coverage, either in whole or in part. When the disagreement concerns the amount of loss, not coverage, it is for the appraisers (and not the court) to arrive at the amount to be paid. The appraisal panel's amount-of-loss calculation includes causation determinations. *See generally, Johnson v. Nationwide Mut. Ins. Co.*, 828 So.2d 1021, 1022 (Fla. 2002); *Merrick Preserve, supra; Kendall Lakes Townhomes Developers, Inc. v. Agricultural Excess and Surplus Lines Ins. Co.*, 916 So.2d 12 (Fla. 3d DCA 2005); *People's Trust Ins. Co. v. Garcia*, 263 So.3d 231 (Fla. 3d DCA January 23, 2019); *People's Trust Ins. Co.v. Tracey,* 251 So.2d 931 (Fla. 4th DCA 2018); *Citizens Property Insurance Corp. v. River Manor Condominium Association, Inc.*, 125 So. 3d 846 (Fla. 4th DCA 2013).

### C. The Appraisal Panel Is Uniquely Qualified To Set The Amount-Of-The-Loss, Resolve Questions Of Causation, And Determine The Scope And Method Of Necessary Repairs.

Unlike arbitration, appraisals are less formal proceedings where the umpire independently attempts to resolve any differences in the appraisals offered by both sides. *See, e.g., Citizens Property Ins. Corp. v. Mango Hill #6,* 117 So. 3d 1226 (Fla. 3d DCA 2013)*; Allstate Ins. Co. v. Suarez,* 786 So.2d 645 (Fla. 3d DCA 2001); *Liberty Mutual Fire Ins. Co. v. Hernandez,* 735 So.2d 587 (Fla. 3d DCA 1999); *Preferred Ins. Co. v. Richard Parks Trucking Co.,* 158 So.2d 817 (Fla. 2d DCA 1963); 15 *Couch on Insurance* 3d § 209:8). There is no requirement that appraisers be sworn, give formal notice of their activities to the parties or counsel, or to hear

evidence; they even may engage in *ex parte* investigation, so long as they ultimately meet in good faith for the purpose of ironing out individual differences. *See generally*, *Citizens Property Ins. Corp. v. Mango Hill #6, supra; Hanover v. Lewis,* 28 Fla. 209, 10 So. 297, 302 (1891); *Allstate Ins. Co. v. Martinez,* 790 So.2d 1151 (Fla. 3d DCA 2001).

### D. Appraisal: The Trial Court's Inherent Authority And Discretion Over The Relative Timing And Order Of Compelling Appraisal And Resolving Coverage Questions.

In accordance with Florida law, Florida federal courts regularly acknowledge and apply the majority view that gives trial courts discretion over the relative timing of appraisal and coverage determinations. Consistent with that view, "the trial court may exercise its discretion when determining whether to compel appraisal of the insurance claim before determining whether the policy covers the claimed loss". *See, Island Shores Condominium Association, Inc. v. Great American Insurance Co. of New York*, Case No. 1:14-CV-24490-UU, 2015 WL 12780951, at*2 (S.D. Fla. May 7, 2015) (court compelled appraisal even though the insurer's fraud defense had been raised, observing that "putting the issue of coverage first before appraisal, … may have 'adverse effects on the expeditious, out of court disposition of litigation); *Castillo at Tiburon Condominium Association, Inc.*, *supra,* at *3 (court compels appraisal to resolve amount-of-loss question prior to resolving question as to whether the insurer admitted coverage for a Hurricane Irma loss; case involved the

22

amount-of-loss, and any coverage dispute was intertwined with that matter; appraisal is thus likely to assist the court when it later determines coverage); *Waterford Condo. Ass'n of Collier Cnty., Inc. v. Empire Indem. Ins.*, No. 2:19-CV-81-SPC-NPM, 2019 WL 4861196, at \*1 (M.D. Fla. Oct. 2, 2019) (court concludes that appraisal could move forward notwithstanding the coverage issue; Empire's appraisal provision anticipated such situation: "If there is an appraisal, we still retain our right to deny the claim"); *Paradise Plaza Condominium Ass'n v. Reinsurance Corp. of New York*, 685 So. 2d 937, 941 (Fla. 3rd DCA 1996); *State Farm Florida Ins. Co. v. Cardelles*, 159 So.3d 239, 241 (Fla. 3d DCA 2015); *Villagio at Estero Condominium Association, Inc. v. American Capital Assurance Corporation*, --So.3d --, 2021 WL 1432160 (Fla. 2d DCA 2021); *American Capital Assurance Corporation v. Leeward Bay at Tarpon Bay Condominium Association, Inc.*, 306 So.3d 1238 (Fla. 2d DCA 2020); *American Coastal Insurance Company v. San Marco Villas Condominium Association, Inc.*, -- So.3d --, 2021 WL 1895930 (Fla. 2d DCA 2021); *American Coastal Insurance Company v. South Seas East Condominium Apartments of Marco Island, Inc.*, 328 So.3d 1160 (Fla. 2d DCA 2021); *American Capital Assurance Corporation v. Cayman I at Tarpon Bay Condominium Association, Inc.*, 313 So.3d 847 (Fla. 2d DCA 2021); *American Capital Assurance Corporation v. Palmetto Dunes at Pelican Sound Condominium Association, Inc.*, 313 So.3d 897 (Fla. 2d DCA 2021); *Sunshine State Ins. v. Rawlins*, 34 So. 3d 753, 754 (Fla. 3d DCA 2010)

23

(adopting a "dual-track approach" where "the order in which the issues of damages and coverage are to be determined ... to the discretion of the trial court").

### E. Appraisal: Separate And Apart From The Unilateral Appraisal Provision, The Court Is Not Required To Impose Additional Guidelines Upon The Parties In Judicially-Compelled Appraisal Proceedings.

In compelling a party's compliance with a contractually-bargained-for unilateral appraisal provision, the District Court has generally enforced such provision as written rather than fashioning requirements to which the parties did not agree. *See generally, Coral Reef Metro, LLC v. Scottsdale Ins. Co*., No. 2:18-cv-460-FtM-38CM, 2019 WL 721286, at *3 (M.D. Fla. Jan. 30, 2019), *report and recommendation adopted*, 2019 WL 700114 (M.D. Fla. Feb. 20, 2019  *3 (court rejects insurer's request for line itemization of damages and delineation of scope in the appraisal award; explains that courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties); *Castillo at Tiburon Condominium Association, Inc.*, *supra,* at *6 (rejecting Empire's request for delineated, line-item form); *Waterford*, 2019 WL 3852731, supra, at *3 (rejecting Empire's request for line item itemization); *Marbella At Spanish Wells 1 Condominium Association, Inc. v.  Empire Indemnity Ins. Co*., No. 2:21-CV-641-SPC-MRM , 2022 WL 1302328, at*2 (M. D. Fla. May 2, 2022); *Concord At The Vineyard Condominium Association, Inc. v. Empire Indemnity Insurance Co*., Case No. 2:21-cv-380 SPC-KCD, 2022 WL 4125041, at*2 (M. D. August 10, 2022)

(rejects Empire's request for imposition of certain minimal guidelines (virtually identical to the prospective instructions requested in the case *sub judice*), including request itemization of the appraisal award and non-use of ACV calculation in that process); *Cherrystone Court, Inc. v. Cincinnati Indemnity Co*., No: 2:21-cv-736-JLB-NPM ,2022 WL 3334685, at*3 (M.D. Fla. August 12, 2022*); The Breakwater Commons Association, Inc. v. Empire Indemnity Ins. Co*., No. 2:20-cv-31-JLB-NPM, 2021 WL 1214888, at*4 (M.D. Fla. March 31, 2021).

### F. The District Court appropriately exercised its inherent authority and discretion in referring the Parties to Appraisal, and the Appraisal Order was in accordance with Florida law.

In light of the foregoing principles, and in line with the well-established precedent governing judicially-compelled appraisal, the District Court's Appraisal Order is entirely appropriate under Florida law. First and foremost, the Record unequivocally demonstrates that Positano's appraisal demand is "ripe"; that is, it satisfies the Florida's "preliminary determination" standard. The District Court's recent decision in *Castillo at Tiburon Condominium Association, Inc.*, *supra,* at *4 defines the "preliminary determination" standard:

> Before a court can compel appraisal, it must make a "preliminary determination" as to whether a demand for appraisal is ripe. *See Citizens Prop. Ins. v. Admiralty House, Inc.,* 66 So. 3d 342, 344 (Fla. Dist. Ct. App. 2011) (citation omitted); *Citizens Prop. Ins. v. Galeria Villas Condo. Ass'n,* 48 So.3d 188, 191-92 (Fla. Dist. Ct. App. 2010). "A demand is ripe where postloss conditions are met, the insurer has a reasonable opportunity to investigate and adjust the claim, and there is a disagreement regarding the value of the property or the amount of

loss." *Am. Cap. Assurance Corp. v. Leeward Bay at Tarpon Bay Condo. Ass'n, Inc*., 306 So. 3d 1238, 1240 (Fla. Dist. Ct. App. 2020), review granted, No. SC20-1766, 2021 WL 416684 (Fla. Feb. 8, 2021) (citation omitted).

Measured against this standard, the Record in this case unequivocally confirms the District Court's finding that Positano's appraisal demand was "ripe" well before the inception of the instant litigation.

First, and with respect to the Policy's post-loss conditions, the Record establishes Positano's (i) pre-suit presentation of the Insurance Claim in March 2018 (and well within those deadlines imposed by the Policy and Florida law); (ii) grant of access to the Insured Premises for Empire's evaluation/assessment; and (iii) compliance with Empire's request for supporting documentation/information, including its completion and submission of the POL and EUO attendance. *See*, (Doc. 47-1, pp. 872-901); (Doc. 41,¶9). Tellingly, and in mounting its challenge to the Appraisal Order on appeal, Empire does not advance Positano's alleged failure to satisfy the Policy's post-loss conditions (and any prejudice resulting therefrom) as a basis for the for the appeal. *See*, (I.B., pp. 51-81). These Record facts report the District Court's finding that Positano satisfied this aspect of the "preliminary determination" standard. *See also, Castillo, supra*, at 5 (District Court opines that "the nature of the post-loss obligations is merely to provide the insurer with an independent means by which to determine the amount of loss, as opposed to relying solely on the representations of the insured"; concludes that although insured provided a late proof

of loss, it remedied the situation within days and insurer was able to independently assess the reported damage by reason inspecting insured's property, requesting insured to produce more documents, and requiring insured to submit to an EUO; because insured provided insurer all it asked post-loss and pre-suit, the court ordered appraisal).

Second, the Record likewise demonstrates that at all times relevant hereto, Empire was afforded (and availed itself) of a reasonable opportunity to investigate and adjust the Insurance Claim, was provided with requested documentation, and conducted in EUO. (Doc. 47-1, pp. 872-901); (Doc. 41,¶9). Empire cannot (and does not) dispute that as a result of its ability to adjust the Insurance Claim, it acknowledged coverage for the Loss as early as May 2018, i.e., its conclusion that the roofing systems for each of the five (5) scheduled Buildings sustained wind damage[5]. (*Id*., at pp. 898-901).

Finally, and as measured against the "preliminary determination" standard, the Record unequivocally evidences the Parties' disagreement over the amount-of-loss valuation. Whereas Empire acknowledges covered damages of at least $39,266.96,

---

[5] Although Empire takes the position that it denied coverage for the Additional Buildings, the District Court concluded that the Record found otherwise. *See*, (Doc. 60, p. 993) ("Empire says it denied coverage for the three buildings…because those buildings did not suffer any hurricane damage whatsoever….But that isn't what the record shows"). Regardless, Empire cannot dispute that it acknowledged at least some covered damage with respect to the Policy's scheduled Buildings, and this finding confirms that it never "wholly denied" coverage in this case. This particular point is fully briefed in subsection IV herein.

Positano's post-deductible calculations are at least $2,140,561.04. (*Id.,* pp. 879-882); (Doc. 39-2).

Simply put, Positano's appraisal demand has been, and continues to be, "ripe"; accordingly, the District Court's acceptance and adoption of Magistrate Judge McCoy's R & R in the instant Appraisal Order clearly satisfies and meets this Court's "clearly erroneous" standard of review on appeal. Moreover, the District Court's referral of the Parties to appraisal in this particular instance is in line with established precedent; the Court regularly exercises its inherent authority to compel appraisal in virtually identical first-party insurance contract disputes. *See e.g., Waterford Condominium, supra; Levi Holding, LLC v. Scottsdale Ins. Co.*, No. 2:18-cv-361-FtM-99CM, 2018 WL 3575082 (M.D. Fla. July 25, 2018); *McPhillips v. Scottsdale Ins. Co.,* No. 2:18-cv-421-FtM-99CM, 2018 WL 3805865 (M.D. Fla. Aug. 10, 2018); *Coral Reef Metro, LLC, supra*; *Diamond Lake Condominium Association, Inc. v. Empire Indemnity Insurance Co*., No. 2:19-cv-547-FtM-38NPM, 2020 WL 9160865 (M. D. Fla. Sept. 30, 2020); *The Breakwater Commons, supra*; *Marbella At Spanish Wells 1,, supra*; *Cherrystone Court, Inc., supra*; *Concord At The Vineyard Condominium Association, Inc., supra.*

### G. *Empire's challenges to the District Court's Appraisal Order*

In its briefing[6], Empire challenges the District Court's Appraisal Order on four separate bases; that is, it argues that the Court could not compel appraisal (i) absent Positano's proof of its entitlement to "specific performance" of the Policy's Appraisal Clause; (ii) absent Positano's demonstration of its entitlement to such remedy via summary judgment; (iii) given its alleged coverage denial for the Additional Buildings; and (iv) absent the issuance of "Guidelines for Appraisal" to the Appraisal Panel. *See*, (I. B., pp. 51-81). For the reasons set forth herein, and as further discussed below, each of Empire's arguments on these points fail as a matter of law.

## II.    **Positano Is Not Required To Plead And Prove Its Entitlement To Specific Performance As A Prerequisite To Judicially-Compelled Appraisal.**

At its core, Empire's second argument is that an insured can only compel appraisal if it pleads a [FED.R.CIV.P.] 65 claim for specific performance. (I.B., p. 51). Without such a cause of action pleaded, the argument goes, a district court cannot compel appraisal. (*Id.*). The argument misses the mark. The Appraisal Order succinctly addresses and dismisses Empire's argument on this point:

> Thus, Empire argues Positano must first obtain judgment in its favor for specific performance before an appraisal may take place....The

---

[6] In responding to each of those arguments raised by Empire in the Appellant's Initial Brief and for ease of this Court's reference to the pinpoint citations contained therein, the Appellee uses the following shorthand reference: ("I. B., p. ___).

problem for Empire… is that the appraisal process is not remedial. Just as an order requiring the parties to attend a mediation is not remedial, participation in the appraisal process will not remedy the damages caused by Hurricane Irma. Rather, as a remedy for the harms caused by Hurricane Irma, Positano seeks to recover the benefits due under the policy in the form of a judgment for monetary damages…. The appraisal will be but one step in this process, supplying an extra-judicial mechanism to calculate the amount of loss. As the Eleventh Circuit explained in *CMR Construction and Roofing, LLC v. Empire Indem. Corp.,* 843 F. App'x 189, 193 (11th Cir. 2021): "Appraisal is a form of alternative dispute resolution that sets a disputed loss amount."

*See*, (Doc. 60, p. 991). Observing that "…Empire has advanced  the injunction argument before and failed", Judge Chappell concluded that the District Court's authority to refer the Parties to appraisal is not grounded in a successfully pleaded and proven theory of recovery, i.e., specific performance"; rather, "[t]he Court's source of authority to order the parties to participate in an alternative dispute process comes from its subject-matter jurisdiction over a contract dispute where the contract contains a provision where the parties contracted for the right to have amount-of-loss disputes decided informally by experienced appraisers". *See*, (*Id*., p.992).

In challenging this aspect of the Appraisal Order, Empire cites *People's Trust Ins. Co. v. Nowroozpour*, 277 So. 3d 135 (Fla. 4th DCA 2019), and *People's Trust Ins. Co. v. Valentin*, 305 So. 3d 324 (Fla. 3d DCA 2020), out of context for the proposition that appraisal can only be compelled after an insured pleads a cause of action for specific performance. (I.B., pp. 51-52, with accompanying footnotes). Neither *Nowroozpour* nor *Valentin* support the conclusion that the exclusive

30

mechanism to compel appraisal is by pleading a claim for specific performance. In fact, *Nowroozpour* stated the "more traditional" procedural vessel to compel appraisal is "to move to compel an appraisal…." *Nowroozpour*, 277 So. 3d at 136.

The reason a motion to compel appraisal is the traditional procedural vessel to compel appraisal, as opposed to specific performance, is because "the appraisal process is not remedial". And this is why Empire's's entire Rule 65 "specific performance" argument fails--it misapprehends the nature of appraisal. *See generally, Breakwater Commons Ass'n, Inc., supra,* at *3 (recognizing that appraisal is neither a remedy nor a theory of recovery, e.g., a claim for specific performance, but, rather, a private dispute-resolution mechanism); *Marbella At Spanish Wells 1*, at*1; (affirming that appraisal is neither a remedy nor a theory of recovery, but, rather, an extra-judicial mechanism to calculate the amount of the loss); *Concord at the Vineyards Condominium Association, Inc., supra,* at*1; (court rejects Empire's argument on this point, noting that cases rejecting such argument are legion).

The remedy is the benefits due under the Policy; thus, "parties can seek appraisal through breach of contract and declaratory judgment actions". *See*, (Doc. 50, p. 918, 921-922, citing to, among other decisions, *Baldwin Realty Grp. Inc. v. Scottsdale Ins. Co.*, No. 6:18-cv-785-Orl-41DCI, 2018 WL 4381206, at *7 (M.D. Fla. Sept. 6, 2018), *report and recommendation adopted*, 2018 WL 5221228 (M.D. Fla. Oct. 22,

2018) (recommending that the parties be compelled to participate in an appraisal even when the insurer was only sued under a breach-of-contract theory); *Waterford Condo. Ass'n, supra,* at*1; *Citrus Contracting LLC v. Philadelphia Indem. Ins. Co.*, No. 6:19-cv-1161-Orl-31LRH, 2019 WL 5191417, at *2 (M.D. Fla. Sept. 30, 2019), *report and recommendation adopted*, 2019 WL 5190925 (M.D. Fla. Oct. 15, 2019) (ordering the parties to engage in an appraisal because the parties disputed the amount of loss); *J.P.F.D. Inv. Corp. v. United Specialty Ins. Co.*, No. 6:17-cv-1415-Orl-40GJK, 2017 WL 4685254, at *3 (M.D. Fla. Sept. 29, 2017), *report and recommendation adopted*, 2017 WL 4657721 (M.D. Fla. Oct. 17, 2017) (ordering the parties to engage in an appraisal as provided for in the relevant insurance contract).

The Florida Rules of Appellate Procedure further undermine Empire's contention that an order concerning appraisal is granting specific performance, and by extension injunctive relief. (I.B., pp. 51-60, with accompanying footnotes). The *Florida Rules of Appellate Procedure* grant parties the right to immediate interlocutory review of orders that "grant, continue, modify, deny, or dissolve injunctions, or refuse to modify or dissolve injunctions." Fla. R. App. P. 9.130(a)(3)(B). However, under a separate subsection, the rules also grant parties the right to immediate interlocutory review of orders that determine "the entitlement of a party to arbitration, *or to an appraisal under an insurance policy*." Fla. R. App. P. 9.130(a)(3)(C)(iv) (emphasis

added).

If, as Empire posits, an order compelling appraisal is synonymous with injunctive relief there would be no need for two separate rules to permit a party to file an interlocutory appeal. The existence of these two separate rules of appellate procedure show that Florida does not consider orders concerning appraisal as synonymous with orders concerning injunctive relief. *Kungys v. U.S.*, 485 U.S. 759, 778 (1988) (Scalia, J.) (it is a "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant.").

Empire then argues that the district court's reasoning is flawed because it applied Florida's arbitration code to an appraisal. (I.B., pp. 57-59, with accompanying footnotes). The argument is a straw man. The District Court did not hold that any aspect of the appraisal travels under the arbitration code; rather, the court merely observed the similarities between these two extra-judicial ADR mechanisms. *See generally*, (Doc. 50, pg. 919-921). The District Court is not alone in having made this observation. *See Webb Roofing & Const., LLC v. FedNat Ins. Co.*, 320 So. 3d 803, 805-06 (Fla. 2d DCA 2021) (citing *Fla. Ins. Guar. Ass'n v. Castilla*, 18 So. 3d 703, 704 (Fla. 4th DCA 2009)) (noting that "[w]hile appraisal and arbitration differ in some important respects, Florida case law recognizes that appraisal clauses are often treated similarly to arbitration clauses."); *see also Three Palms Pointe, Inc. v. State Farm Fire and Cas. Co.*, 250 F.Supp.2d 1357, 1362 (M.D. Fla. 2003), *aff'd*,

362 F.3d 1317 (11th Cir. 2004). Either way, the District Court made it clear that its arbitration analogy was not outcome determinative. (Doc. 50, pp. 919-921).

At bottom, Empire's arguments are based on cherry-picked portions (or even singular phrases) of decisions cited out of context. The right to compel appraisal need not be pleaded as a cause of action for specific performance.

### III. Positano Was Not Required To Allege And Prove Empire's Breach Of The Appraisal Clause Through Summary Judgment As A Prerequisite To Judicially-Compelled Appraisal.

Empire next posits that the District Court further erred in concluding that it did not need to treat Positano's Appraisal Motion as one for summary judgment, and, further, suggests that "[i]n the absence of an adjudicated breach, Empire should not have been forced to perform". *See*, (I.B., p.65). Well-established precedent on this point demonstrates why Empire is wrong on this point: a motion to compel appraisal is just that, a motion to compel appraisal. In granting Positano's Appraisal Motion, the District Court did not not dispose of any claim or defense pleaded by Positano or by Empire. Accordingly, Positano's compliance with FED.R.CIV.P. 56 is, and has always been, an unnecessary prerequisite to the District Court's referral of the Parties to appraisal.

Citing to well-established decisional law on this various point, the District Court opined that "… because appraisal will not dispose of any claims or defenses [it] does not treat the motion to compel appraisal as one for summary judgment"; rather, the

appraisal process (i) is an agreed-upon extra-judicial ADR mechanism to calculate the amount-of-loss; (ii) will not remedy the damages caused by Hurricane Irma, and (iii) is but one step in the process of Positano's efforts to secure a judgment for monetary damages in this matter. *See*, (Doc. 60, pp. 992-993). *See*, *Breakwater Commons Ass'n,* supra, at \*3 (M.D. Fla Mar. 31, 2021) (Florida's state and federal courts historically and routinely refer amount-of-loss questions to appraisal by interlocutory order and without entering a judgment or injunction; appellate courts routinely affirmed this practice; to treat references to private dispute-resolution mechanisms as summary-judgment or injunctive-relief motions would undermine the very reason parties agree to such mechanisms: to reduce or avoid litigation; neither the parties nor the Court need to be burdened with such an approach here, and [the insured's motion to compel appraisal] is procedurally proper (citations omitted)). *See also*, *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, *supra*, at \*3) (court explains the difference between summary judgment and appraisal: an appraiser determines the amount of loss, while the purpose of summary judgment is to dispose of the merits of claims and defenses that are factually unsupported; the court, in determining whether appraisal is  appropriate, does not determine whether there is a genuine disputed material fact or whether the moving party is entitled to judgment); *Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem., supra,* at \*7 (court rejects Empire's argument that appraisal cannot be compelled before a final

35

determination is made as to whether the insurer reached the policy's appraisal provision, and, further, concluding that a motion to compel appraisal, rather than a motion for summary judgment, is the proper vehicle for such relief); *Waterford Condo. Ass'n, supra*, at *2 (court would not treat insured's motion to compel appraisal as one for summary judgment); *Concord at the Vineyards condominium Association, Inc*., Case No.  2:21-cv-380-SPC-KCD, 2022 WL 4125041, *1 (accord); *Marbella At Spanish Wells 1 Condo. Association, Inc., supra,*  at *1 (accord).

### IV. THE DISTRICT COURT APPROPRIATELY REFERRED THE PARTIES TO APPRAISAL FOR EACH OF THE SCHEDULED BUILDINGS ON THE POLICY.

The Record demonstrates several undisputed facts:  (i) Empire's "undisputed payment" of $39,266.96 to Positano for Hurricane Irma damage; (ii) Positano's Insurance Claim involves one windstorm storm event and one insurance policy; (iii) Empire's assignment of one single claim number for its investigation of the multiple scheduled buildings located at the Insured Premises; (iv) Empire's single global assessment of those damages claimed with respect to the Policy's scheduled Buildings; and (v) Empire's global post-loss requests for the EUO and supporting documentation. The Record further confirms Empire's February 6, 2019 request for a single POL submission and single quantification of Positano's claimed damages *for the entire Insurance Claim*:

The POL must state the actual and complete amount of your client's

claim and must include all of the documentation that supports the amount reflected on the POL. We would expect the submission to include all incurred repairs, estimated repairs, and a proper determination of the actual cash value ("ACV") of the claimed damages.

Finally, Empire cannot dispute that Positano's $2,140,561.04 POL clearly exceeded its $39,266.96 "undisputed payment"/coverage acknowledgment. *See,* (Doc. 39-2); (Doc. 47-1, pp. 872-901).

Given Empire's (i) global adjustment of Positano's single Insurance Claim under the single insurance contract, (ii) acknowledgment of hurricane -related damage upon the Insured Premises, and (iii) $39,266.96 "undisputed payment", the District Court's referral of the Parties to appraisal on the disputed amount-of-loss question is entirely appropriate. Florida law is clear: in instances where the insurer acknowledges insurance coverage, *either in whole or in part*, the appraisal process can be properly invoked under the unilateral appraisal provision. When the disagreement concerns the amount of loss, there is no "policy defense" or "coverage defense" at issue; thus, it is for the appraisers (and not the court) to arrive at the amount to be paid. *See generally, Johnson v. Nationwide Mut. Ins. Co.*, *supra,* at 1022; *Gonzalez v. State Farm Fire And Cas. Co*., 805 So.2d 814, 816-17 (Fla. 3d DCA), *aff'd,* 828 So.2d 1021 (Fla. 2002).

Based upon this Record, and as measured against the "preliminary determination" standard, both Magistrate Judge McCoy and Judge Chappell

appropriately concluded that Empire has not "wholly denied" coverage for this single insurance claim under the Policy; hus, its referral of the Parties' amount-of-loss dispute to appraisal was warranted under Florida law. Moreover, and in reliance upon well-established precedent, the District Court correctly concluded that such appraisal could occur prior to its disposition of those coverage defenses framed by the pleadings.

**A.** ***The District Court's Order Compelling An Appraisal On Each Of The Policy' Scheduled Buildings Is In Accord With Florida Law.***

Fundamentally, the relevant Record facts at issue here are virtually identical to those operative facts considered by Florida's Fourth District in *Merrick Preserve Condominium Association, Inc. v. Cypress Property & Casualty Insurance Co*., *supra.* As in this case, the first-party property insurance coverage dispute at issue in *Merrick* centered upon a condominium association's ("association") Hurricane Irma claim. *Merrick*, *supra,* at 47. At the time of the loss, the association's commercial insurance policy afforded coverage for twenty-four (24) scheduled structures, i.e., twenty-one (21) residential buildings, pool, pool house, and restroom, each of which were insured for separate premiums with separate deductibles and coverage provisions. *Id.*

The association ultimately submitted its pre-suit claims for damage to each of the residential buildings (including its claim for a full roof replacement for each building) and the pool house, the amount of which clearly exceeded the policy's

stated deductible(s). The insurer, in reliance upon its own pre-suit claims investigation, disagreed with the association's evaluation of the loss and asserted its pre-suit position that (i) only the nonresidential pool house structure had damage that exceeded the "per building" hurricane deductible; (ii) although seventeen (17) of the residential buildings sustained damage covered by the policy, the damage amounts were below the stated deductible amounts for these buildings; and (iii) four (4) of the residential buildings and pool sustained no damage. Thus, the insurer only offered to pay just over $5000 for damage to the pool house. *Id.,* at 47-48.

Given the parties' disagreement over the scope and extent of the covered loss, the association issued its May 2019 pre-suit appraisal demand in accordance with the policies's unilateral appraisal provision. The insurer rejected such demand, again advising the association of its position (i) that Hurricane Irma caused "minimal damages to some roof tiles" within the "per building" deductibles, and (ii) that most of the claimed roof damage "…was unrelated to the storm and was caused by excluded causes of loss including thermal expansion, lack of maintenance, and age-related wear and tear". *Id.,* at 48-49.

The association thereafter filed suit to compel appraisal. At the the trial court's hearing upon the appraisal issue, the insurer argued that "it did not concede any roof damage was covered and maintained that the roof claims were denied". The association, on the other hand, pointed out that although the loss amount did not

meet the policy deductibles, the insurer had nevertheless admitted that there was some covered loss under the policy. The association argued that by admitting covered losses and offering payment for the damage to the pool house, the insurer had not "wholly denied" its claims, and, therefore, "appraisal was therefore appropriate to resolve the amount of loss dispute, including causation". The trial court issued a written order denying the association's petition to compel an appraisal, from which the association then took its appeal. *Id*.

In reversing the trial court, and in reliance upon well-established precedent, the Fourth District held:

> Accordingly, where the insurer has not "wholly denied" coverage, but the parties dispute whether the claimed damage resulted from a covered or uncovered cause, appraisal is appropriate to determine causation….Here, *with the exception of four residential buildings and the pool*, almost every building sustained both covered damages and uncovered damages. So even though each building is covered by what is effectively a separate policy, the individual claims [are] …subject to appraisal because the insurer did not "wholly deny" the claims but disputed the cause of damage.

> Even though we have held appraisal is premature where there is a disputed issue of fact regarding coverage, the insurer here did not "wholly deny" coverage. Most of the association's buildings sustained damage. According to the insurer, some of those damages are not covered. Under these circumstances, an appraisal is appropriate to determine the amount of loss to each building, and particularly whether the roof damages were caused by the hurricane or by uncovered causes.

*Id.*, at 49-50 (emphasis supplied; citations omitted).

In this particular instance, the District Court's reliance upon the *Merrick* Court's

reasoning was entirely appropriate in light of the District Court's *de novo* review of the Record and its accompanying adoption of the Magistrate Judge's R & R. The District Court's reasoning is further supported by the plethora of Florida decisional law on this issue. *See generally*, *Kendall Lakes, supra*, at 13-14 (in case involving 13-building townhome complex, insured claimed windstorm damage of $716,000, whereas insurer maintained that only 2 buildings had missing roof tiles, the replacement cost of which is less than the policy's windstorm deductibles; in addressing the scope of the insured's demand for appraisal for all claimed damage at issue, Florida Third District held that demand was properly before the appraisal panel on the amount-of-loss question: "although there is a large discrepancy between the insured's and insurance carrier's estimate of the loss, because the insurer has not wholly denied that there is a covered loss, causation is "an amount-of-loss question for the appraisal panel," not a coverage question that can only be decided by the trial court"); *Underwriters at Lloyd's, London v. Sorgenfrei*, 278 So. 3d 930, 931 (Fla. 5th DCA 2019) (Florida Fifth District found that the insured filed a single claim under the policy, and the insurer agreed that a portion of the claim was covered while also asserting that the amount of loss did not exceed the deductible and that the balance of the claim loss constituted excluded pre-existing damage; court held that the insurer did not "wholly deny" coverage in compelling appraisal); *Tracey, supra,* at 933 (Florida Fourth Disctict held that the insurer was entitled to appraisal because

the insurer did not "wholly deny" coverage when it admitted coverage for part of the insured's claim, but declined to repair the insured's roof; the insurer successfully argued an appraisal was proper to determine whether the roof damage was caused by a covered cause or an uncovered cause). *See also, People's Trust Ins. Co. v. Garcia*, 263 So. 3d 231, 236-238 (Fla. 3d DCA 2019)(where insurer admitted that there was coverage for water damage to the insured's property as a result of a roof leak, but maintained that roof itself was excluded from coverage, issue of causation of damage to home's roofing system was an amount-of-loss question subject to appraisal, and not a question of coverage for the court); *First Protective Ins. Co. v. Colucciello,* 276 So. 3d 456, 458 (Fla. 5th DCA 2019) (while insurer refused to pay for exterior damage to home, coverage under insured's homeowner's policy was not "wholly denied"; thus, insurer was entitled to compel appraisal under terms of policy, where insureds submitted one claim for damage caused by water intrusion, insurer agreed there was covered claim, paid significant amount on claim for mold damage and other interior damage caused by water intrusion, but disagreed with insured as to total amount owed); *State Farm Florida Ins. Co. v. Sheppard*, 268 So. 3d 1006, 1007 (Fla. 1st DCA 2019); *MKL Enterprises, LLC v. American Traditions Ins. Co.,* 265 So. 3d 730 (Fla. 1st DCA 2019).

As support for its argument that the District Court erred in compelling appraisal for each of the Policy's scheduled Buildings in this case, Empire cites to *Pernas v.*

42

*Scottsdale*, No. 1:15-CV-21506-KMM, 2016 WL 471949 (S.D. Fla. Feb. 8, 2016) and *Florida Insurance Guaranty Association v. B.T. of Sunrise Condominium Association, Inc.*, 46 So.3d 1039 (Fla. 4th DCA 2010). Both decisions are either inapposite and/or distinguishable from the operative facts at issue here.

In *Pernas,* and unlike those facts demonstrated by the Record in the case *sub judice*, the parties' dispute was not limited to a disagreement over "amount-of-loss" and "causation" questions, but, rather, centered upon material questions as to whether the insured had also satisfied the insurance policy's post-loss conditions in the course of her presentation of the insurance claim. Specifically, the court found that there were material questions as to whether the insured breached her post-loss obligations by failing (i) to preserve the property from further damage at and after the time of loss, and (ii) to cooperate in the investigation of her claim. *Pernas, supra*, at *3. Thus, the court's reasoning and rationale in *Pernas* is easily distinguishable from the Parties' amount-of-loss question at issue here. As noted by Magistrate Judge McCoy in the R&R, "[h]ere, [Empire] is not alleged that [Positano] violated its post-obligations as they relate to the Additional Buildings. *See*, (Doc. 50, p. 926); (Doc. 47); (Doc. 47-1).

Likewise, the Florida Fourth District's decision in *Florida Guaranty Assn. Inc. v. B. T. of Sunrise Condominium Association, Inc., supra*, which is cited in *Pernas*, is easily distinguishable from the insurance contract dispute here. The court's

decision in that case was *not* centered upon the judicial construction and application of the policy's unilateral appraisal provision on the "wholly denied" question; rather, the case involved the court's analysis of FIGA's obligations under the statutory scheme mandated by §§ 631.54 and 631.57 FLA.STAT., i.e., whether FIGA's $300,000 statutory cap separately applied to each of the 7 buildings scheduled under one insurance policy, or, alternatively, whether FIGA's obligation was limited to a single $300,000 lump sum aggregate. Simply put, those facts at issue in *Sunrise* in no way involved a question of whether FIGA denied coverage, either in whole or in part, for the seven buildings as a result of the windstorm or event. Rather, the case simply involved the determination of the scope and application of the $300,000 statutory cap. *Id.,* at 1043.

### B. In compelling appraisal, the District Court appropriately exercised its inherent discretion over the relative timing of appraisal and coverage determinations.

In its briefing on this point, Empire further suggests that with "no precedent",  the District Court "wrongly asserted that even if Empire was correct, it retained discretion to compel appraisal of all buildings". *See,* (I.B.,p. 71). Empire's argument is simply off-base. Both Judge Chappell and Magistrate Judge McCoy cited to the District Court's prior decision in *Castillo at Tiburon Condominium Association, Inc.*, *supra,* at *5-6  (finding that the "Court sides with the majority view that gives trial courts discretion over the relative timing of appraisal and coverage

44

determinations", citing to Florida federal and state decisions on this point, i.e., *Waterford Condo. Ass'n,* supra, at *1; *Leeward Bay*, *supra* at 1242; *Sunshine State Ins. v. Rawlins*, *supra,* at 754). Based upon its *de novo* review of the Record Facts, and in reliance upon the foregoing precedent confirming its inherent discretion in the timing of the amount-of-loss and coverage determinations, it appropriately found that requiring appraisal for each of the Policy's scheduled Buildings will "likely assist the court when it later determines coverage". That finding should not be disturbed on appeal.

### V. IN EXERCISING ITS INHERENT AUTHORITY TO COMPEL APPRAISAL ON THE AMOUNT-OF-LOSS QUESTION, THE DISTRICT COURT WAS NOT REQUIRED TO IMPOSE PROSPECTIVE INSTRUCTIONS ON THE APPRAISAL PANEL.

Finally, Empire suggests that the District Court "improperly refused to consider any reasonable guidelines for the appraisal process except itemization of the award, incorrectly assuming it lacked the power to prescribe them". *See,* (I.B., p. 73). The "reasonable instructions" sought by Empire included: (1) access to information relied on by the appraisers; (2) empowering appraisers to request needed information; (3) no *ex parte* communications with the panel without notice; (4) a calculation of ACV that excludes matching and depreciates labor; and (5) the panel's reliance solely on documents showing amounts actually spent on completed repairs in ascertaining RCV, not estimates ("Instructions"). *See, Id*., at 76. Empire's request for "reasonable instructions" notwithstanding, its challenge to the District Court's

Appraisal Order on this point runs afoul of the well-established Florida precedent governing the unilateral appraisal provision and the appraisal panel's resolution of the amount-of-loss question arising thereunder. In its eight (8) pages of briefing on this argument, Empire *does not cite to one* reported Florida federal or state court decision wherein the court has adopted such Instructions in its construction and application of the standard unilateral appraisal provision under Florida law.

### A. *The District Court's Refusal To Rewrite The Policy's Appraisal Provision Was Correct.*

The District Court's refusal to impose these Instructions upon the appraisal panel is anything but "improper". Rather, the District Court is doing nothing more than enforcing a contract provision that Empire itself drafted, marketed, and sold to its customer base, including Positano. In rejecting Empire's demand for these additional Instructions, the District Court is simply following the Florida Supreme Court's and this Court's long-standing application of a cornerstone principles of insurance contract law: when construing insurance policies, courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties. Rather, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect. *See generally*, *Horn v. Liberty Ins. Underwriters, Inc*., 998 F. 3$^d$ 1289, 1294 (11th Cir. 2021); *Intervest Construction of Jax., Inc. v. General Fidelity Ins. Co*., 133 So. 3d 494, 497 (Fla. 2014).  The cases wherein the District Court has relied upon these cornerstone principles of insurance

contract law in applying and enforcing the unilateral appraisal provision are legion, including other litigation involving Empire. *See generally, Coral Reef Metro, LLC v. Scottsdale Ins. Co*., *supra,* at \*3 (court rejects insurer's request for line itemization of damages and delineation of scope in the appraisal award; explains that courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties, *citing, Intervest Constr. of Jax, Inc., supra*); *Castillo at Tiburon Condominium Association, Inc.*, *supra,* at \*6 (rejecting Empire's request for delineated, line-item form); *Waterford*, 2019 WL 3852731, supra, at \*3 (rejecting Empire's request for line item itemization); *Marbella At Spanish Wells 1 Condominium Association, Inc., supra,* at \*2; *Concord At The Vineyard Condominium Association, Inc., supra,* at \*2 (rejects Empire's request for imposition of certain minimal guidelines virtually identical to the prospective instructions requested in the case *sub judice*, including a request for itemization of the appraisal award and non-use of ACV calculation in that process); *Cherrystone Court, Inc. v. Cincinnati Indemnity Co*., *supra*, at \*3*; The Breakwater Commons Association, Inc. v. Empire Indemnity Ins. Co*., at \*4.

Applying these cornerstone principles of insurance contract law to the subject Policy at issue, Empire tellingly does not (and cannot) refer to any provision therein that requires, mandates or permits a court's imposition of the Instructions on the appraisal panel's amount-of-loss deliberations arising under the unilateral Appraisal

Clause. Arguably, had Empire wanted these Instructions built into the Policy's appraisal mechanism, it could and should have done so in the first instance.

**B**. ***Empire's Requested Instructions Clearly Contradict The Well-Established Precedent Governing The Function And Purpose Of The Appraisal Panel's Resolution Of The Amount-Of-Loss Question.***

Moreover, Empire's request completely ignores the well-established Florida precedent governing the appraisal panel's function, deliberations and resolution of the amount-of-loss question arising under the unilateral appraisal provision. In drafting, marketing, and selling an insurance product with the Appraisal Clause, Empire cannot dispute those long-standing principles governing this process: (i) appraisals are less formal proceedings where the umpire independently attempts to resolve any differences in the appraisals offered by both sides; and (ii) there is no requirement that appraisers be sworn, give formal notice of their activities to the parties or counsel, or hear evidence; they even may engage in *ex parte* investigation, so long as they ultimately meet in good faith for the purpose of ironing out individual differences. *See generally*, *Allstate Ins. Co. v. Suarez, supra*; *Citizens Property Ins. Corp. v. Mango Hill #6, supra.*

Empire's requested Instructions, if required, would necessarily inject judicial intervention and the trial court's micro-management into this entire process, thereby truncating the appraisal panel's expertise in expeditiously addressing and resolving complex amount-of-loss questions arising under first-party property insurance

policies --- a process that is judicially preferred and has worked well for decades. Acknowledging the well-developed principles underlying the appraisal process, the District Court was not willing to judicially intervene in the Parties' contractually-bargained-for process, and its findings on this point should not be disturbed on appeal.

### C. Empire's Requested Instructions Clearly Frustrate The Entire Purpose For The Appraisal Process Under Florida Law.

Finally, Empire's request for the District Court's intervention to issue Instructions to the appraisal panel (and the accompanying implementation and monitoring of the same), entirely defeats the purpose for the Policy's unilateral Appraisal Clause in the first instance. For decades, Florida federal and state courts have acknowledged that appraisal clauses provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits. *Fla. Ins. Guar. Ass'n v. Olympus Ass'n*, 34 So. 3d 791, 794 (Fla. 4th DCA 2010). "The appraisal process . . . is simply work done within the terms of the contract to resolve the claim." *Hill v. State Farm Fla. Ins. Co.*, *supra*, at 961. Appraisals conserve judicial resources which might otherwise be required to resolve difficult issues presented by property insurance claims through a "relatively swift and informal decision by the appraisers as to the amount of loss." *Paradise Plaza Condo. Ass'n v. Reinsurance Corp. of N.Y.*, *supra*, at 941. *See also, Merrick, supra*, at 49. Compelling appraisal "not only upholds the terms of the policy but conserves the parties' and this Court's resources

should appraisal resolve the scope of loss issue between the parties without further litigation." *Castillo, supra*, at*6; *People's Tr. Ins. Co. v. Fernandez*, 317 So. 3d 207, 211 (Fla. 3d DCA 2021); *State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d, *supra*, at 1201-02 (noting "the general, even overwhelming, preference in Florida for the resolution of conflicts through extra-judicial means, especially arbitration, for which the parties have themselves contracted").

In this case, and in furtherance of these public policy concerns, the District Court correctly applied this well-established precedent in enforcing the Policy's unilateral Appraisal Clause without the overlay of judicially-crafted Instructions, noting that (i) "enforcement of appraisal provisions is preferred over lawsuits as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits", and (ii) methods of alternative dispute resolution, such as appraisal, should be employed when possible". *See*, (Doc. 50, pp. 917-918 [citations omitted]). The District Court's finding on this point should not be disturbed on appeal.

## <u>CONCLUSION</u>

For the reasons stated herein and in its Jurisdictional Brief, Positano respectfully requests this Court to: (1) dismiss the instant appeal for lack of jurisdiction; or (2) affirm the District Court's Appraisal Order.

## <u>CERTIFICATE OF COMPLIANCE</u>

### *1. Type-Volume*

This brief complies with word limit of FRAP 32(a)(7)(B) because, excluding the parts of the brief exempted by FRAP 32(f), this brief containing 11,969 words.

### *2. Typeface and Type-Style*

This brief complies with typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

By: /s/ Gregory L. Evans
Gregory L. Evans
Florida Bar No.: 0767824

51

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 26, 2022, a copy of the foregoing has been electronically furnished by CM/ECF to:

J. Pablo Caceres
Christian Lee Gonzalez-Rivera
Butler Weihmuller Katz Craig, LLP
400 N. Ashley Drive, Suite 2300
Tampa, FL  33602
Telephone: (813) 281-1900
Facsmile: (813) 281-0900
pcaceres@butler.legal
cgonzalez-rivera@butler.legal
 cmattern@butler.legal

**BOYLE, LEONARD & ANDERSON, P.A**.

/s/ *Gregory L. Evans*
**Mark A. Boyle**
Florida Bar No. 0005886
mboyle@insurance-counsel.com
**GREGORY L. EVANS**
Florida Bar No. 0767824
gevans@insurance-counsel.com
9111 W. College Pointe Drive
Fort Myers, Florida 33919
Tel: (239) 337-1303
Fax: (239) 337-7674
*Attorneys for the Appellee*